ROBERT FITZGERALD POUGH, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 21954–07L.     Filed September 13, 2010.

R seeks to collect income taxes and sec. 6672, I.R.C., pen-
alties by means of levy and lien. At the trial of this case P
raised his inability to obtain a home equity loan unless the
tax lien was released. P failed to timely raise this issue with
the assigned Appeals officer although he was given a reason-
able time to respond, to obtain a loan, and to have his counsel
contact the Appeals officer. Regarding the income tax liabil-
ities, P failed to submit amended income tax returns after
being provided adequate time to do so. P had previously
agreed to his liability under sec. 6672, I.R.C., after being
offered an administrative hearing. *Held*: P did not properly
raise the income tax liabilities with the Appeals officer and
may not raise that issue in this case. See *Giamelli v. Commis-
sioner*, 129 T.C. 107, 111 (2007). *Held, further*, P, having
declined an administrative hearing, may not raise in this pro-
ceeding the sec. 6672, I.R.C., liability. *Held, further*, because
the Appeals officer gave P adequate time to submit the
requested items, it was not an abuse of discretion to move
ahead when P failed to submit them. *Held, further*, R's pro-
posed collection actions are sustained.

Robert Fitzgerald Pough, pro se.
*Anne M. Craig*, for respondent.

OPINION

GOEKE, *Judge*: This case was commenced in response to a
notice of determination concerning collection action sus-
taining a notice of Federal tax lien and a proposed levy with
respect to section 6672[1] civil penalties for three calendar
quarters during 2006 and income taxes for years 2002
through 2005. The issue for decision is whether the Internal
Revenue Service (IRS) Appeals officer abused her discretion
in determining to sustain the tax lien and the proposed levy.
For the reasons stated herein, we conclude that the Appeals
officer did not abuse her discretion.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect
for the relevant period.

344

## *Background*

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Florida.

Petitioner is president of 911 Direct, Inc. (911 Direct), which sells, installs, and services equipment for police and fire dispatchers. 911 Direct was delinquent in paying trust fund taxes for quarters ending March 31, June 30, and September 30, 2006.

On December 6, 2006, petitioner and his representative met with an IRS revenue officer. The IRS thereafter issued to petitioner a Letter 1153(DO) proposing to assess section 6672 penalties against petitioner for the unpaid trust fund taxes of 911 Direct. Petitioner did not appeal or contest the assessments proposed in the Letter 1153(DO). Petitioner signed Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, agreeing to assessments against him of section 6672 penalties for the unpaid trust fund taxes of 911 Direct.

On February 2, 2007, petitioner filed delinquent 2002, 2003, 2004, and 2005 income tax returns. Each return showed a balance due.

On March 26, 2007, petitioner was issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for his 2004 and 2005 income tax liabilities. On April 16, 2007, petitioner was issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for his 2002 and 2003 income tax liabilities. On April 18, 2007, petitioner was issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for his 2004 and 2005 income tax liabilities. On April 27, 2007, petitioner was issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for his 2002 and 2003 income tax liabilities. On May 22, 2007, petitioner was issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for the trust fund recovery penalties (TFRPs). On June 5, 2007, petitioner was issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for the TFRPs. Petitioner timely submitted requests for hearings in response to each Notice of Federal Tax Lien Filing and

*Your Right to a Hearing Under* IRC *6320 and Final Notice of Intent to Levy and Notice of Your Right to a Hearing*.

An IRS Appeals officer was assigned to hear petitioner's requests. The Appeals officer determined that 911 Direct was not current on its 2007 Federal tax deposits (FTDs) and that petitioner was not in compliance with estimated payments of his income taxes for 2006 and 2007. The Appeals officer and petitioner held a telephone hearing on April 26, 2007. During the hearing, petitioner said he would be able to pay the TFRPs within 60 days, but he did not. Petitioner also said that his accountant incorrectly prepared petitioner's tax returns for 2002 through 2005. Petitioner said he intended to file Forms 1040X, Amended U.S. Individual Income Tax Return, but he never did so. Additionally, petitioner orally requested an installment agreement of $200 a month, but he never submitted a Form 656, Offer in Compromise.

The Appeals officer requested that petitioner file Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 433–B, Collection Information Statement for Businesses, and submit a 2006 Profit and Loss (P&L) statement for 911 Direct. The Form 433–A petitioner submitted showed equity of approximately $61,000 in real estate he owned. The P&L statement petitioner submitted showed 911 Direct had net income of $144,870 in 2006.

On May 30, 2007, the Appeals officer determined that petitioner's unpaid individual tax liabilities from Forms 1040, U.S. Individual Income Tax Return, for years 2002 through 2005 would total $56,111 by October 28, 2007. On May 31, 2007, the Appeals officer called petitioner and asked whether he would be able to pay this liability within 120 days by borrowing against his assets. Petitioner responded that he would be meeting with a loan officer at his bank in the next week to discuss refinancing his property in order to pay the individual liabilities. The Appeals officer told petitioner to notify her by June 14, 2007, if he was unable to secure sufficient financing to pay the individual liabilities within 120 days. Petitioner called with questions on June 7, 2007, and reaffirmed his commitment to get back to the Appeals officer with further information on financing by the June 14, 2007, deadline. Petitioner did not get back to the Appeals officer. Petitioner represents that he inquired about a home equity

loan but was told he could not get one because of the liens which the IRS had filed on his home. Petitioner introduced no evidence that he had actually made such an inquiry with a bank. Petitioner further represents that he requested that the Appeals officer lift the liens so that he could apply for a loan. There is no evidence that such a request was made until July 10, 2007. At that time the Appeals officer did not release the liens.

On June 19, 2007, petitioner informed the Appeals officer that he was preparing a request for abatement of penalties for all taxable years at issue, but he did not specify which penalties he was referring to. Petitioner said he would send the abatement request to the Appeals officer by July 9, 2007. Petitioner never sent such a request.

On July 10, 2007, the Appeals officer called petitioner and informed him that records indicated that he had not made any FTDs for 911 Direct for the quarters ending March 31, and June 30, 2007. During the July 10, 2007, telephone call, petitioner claimed he would provide verification of compliance with the obligation to make FTDs for those quarters. Petitioner also requested an additional week to see whether he could get funds to fully pay his liabilities for income taxes and for TFRPs within 60 days. Petitioner did not provide verification of compliance by 911 Direct with its obligation to make the FTDs or provide information regarding full payment of his liabilities.

On July 16, 2007, petitioner left a message for the Appeals officer that he had retained someone with a power of attorney to represent him. Petitioner stated the representative would contact the Appeals officer the next day to discuss the case. No one did.

On July 25, 2007, the Appeals officer again spoke with petitioner. Petitioner asked whether the Appeals officer had been contacted by his representative, and she responded that she had not. The Appeals officer informed petitioner that she planned to close the file. Petitioner said he would get in touch with the representative and have the person contact the Appeals officer the next day if the Appeals officer would delay closure of the file. The Appeals officer agreed to delay; however, again no one contacted her. On August 2, 2007, the Appeals officer closed the file.

On August 23, 2007, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and 6330 (notice of determination). The notice of determination sustained the proposed levy and the notices of Federal tax lien (NFTLs) for all tax periods at issue. The notice of determination set forth a conclusion that the requirements of law and administrative procedure had been met and that the need for efficient collection justified the intrusiveness of the collection action. The notice of determination also stated that petitioner had not submitted a written request for an abatement of penalties, nor a Form 656; that neither an offer-in-compromise nor an installment payment would be an acceptable collection alternative given petitioner's equity in assets and his earning capacity; and that petitioner was not in compliance with his income tax obligations for 2006 and 2007, nor was 911 Direct in compliance with its obligation to make FTDs for 2007.

Petitioner timely filed a petition for lien or levy action under sections 6320(c) and 6330(d) requesting a review of respondent's collection action. The petition alleged that petitioner and 911 Direct were in compliance with all Federal tax filings and that no loans could be obtained to satisfy the liabilities.

A trial was held on March 8 and 9, 2010, in Jacksonville, Florida. At trial petitioner testified extensively. Much of his testimony pertained to a separate hearing involving 911 Direct which was not appealed to this Court and which is not at issue. Petitioner also testified that he was confused about all the actions taken against him and how to resolve them. Finally, petitioner testified that the income of 911 Direct as stated in the P&L statement was incorrect.

## *Discussion*

### I. *Lien and Levy Hearings*

Section 6321 imposes a lien in favor of the United States on all property of a taxpayer liable for taxes after a demand for payment of the taxes has been made and the taxpayer fails to pay. The lien arises when the assessment is made. Sec. 6322. The Secretary must send a written notice to the taxpayer of the filing of a notice of lien and of the taxpayer's right to a hearing on the matter. Sec. 6320(a). Similarly,

before proceeding with a levy, the IRS must issue a final notice of intent to levy and notify the taxpayer of the right to a hearing. Sec. 6330(a) and (b)(1). During the hearing, a taxpayer may raise any relevant issue, including challenges to the appropriateness of the collection action and possible collection alternatives. Sec. 6330(c)(2)(A). Following the hearing, the Appeals Office must make a determination whether the lien filing was appropriate and is required to consider: (1) Whether the Secretary has met the requirements of applicable law and administrative procedure; (2) the relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

## II. *Underlying Liabilities*

In a hearing a taxpayer may challenge the existence or amount of the underlying tax liability for any tax period if he did not receive a notice of deficiency for such liability or otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). We address the underlying TFRP and income tax liabilities separately.

Petitioner previously had an opportunity to challenge the TFRP liabilities when he received the Letter 1153(DO), but he did not do so. Instead, petitioner signed Form 2751, agreeing to assessment against him of the TFRPs. Therefore he was unable to contest the underlying TFRP liabilities in the hearing, and we may not consider them. Sec. 6330(c)(2)(B), (d).

While petitioner told the Appeals officer that he intended to file amended income tax returns, petitioner did not do so over the period of nearly 7 months between the filing of his original Forms 1040 and the issuance of the notice of determination. The underlying income tax liabilities were therefore not challenged in the hearing, and we may not consider them. See sec. 6330(c)(2)(B), (d); *Giamelli v. Commissioner*, 129 T.C. 107, 111 (2007); *Newstat v. Commissioner*, T.C. Memo. 2005–262.

III. *Standard of Review*

Where a taxpayer's underlying tax liability is not in dispute, the Court reviews the Commissioner's determination for abuse of discretion. See *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). To establish an abuse of discretion, the taxpayer must prove that the decision of the Commissioner was arbitrary, capricious, or without sound basis in fact or in law. *Giamelli v. Commissioner*, *supra* at 111 (citing *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999)); *Tinnerman v. Commissioner*, T.C. Memo. 2010–150. In reviewing for abuse of discretion, we generally consider only the arguments, issues, and other matters that were raised at the hearing or otherwise brought to the attention of the Appeals Office. *Giamelli v. Commissioner*, *supra* at 115; *Tinnerman v. Commissioner*, *supra*. Considering the facts of this case, we find that there was no abuse of discretion in the Appeals officer's determination to uphold the tax lien and the proposed levy against petitioner.

IV. *Whether the Decision To Sustain the Liens and Notices of Levy Was an Abuse of Discretion*

A. *Whether the Secretary Has Met the Requirements of Applicable Law and Administrative Procedure*

Before issuance of a notice of determination, an Appeals officer must verify that all requirements of applicable law and administrative procedure have been met. Sec. 6330(c)(1), (3)(A). The Appeals officer determined that respondent followed the requirements of applicable law and administrative procedure in filing the liens and proposing to levy. The notice of determination noted that the liabilities were duly assessed and the requisite notices were mailed timely to petitioner. There is no evidence that the requirements of applicable law and administrative procedure were not satisfied.

B. *Relevant Issues Raised by Petitioner*

An Appeals officer is required to consider any relevant issue raised by a taxpayer during the course of a hearing, including challenges to the appropriateness of collection action and collection alternatives offered by the taxpayer.

Sec. 6330(c)(2)(A), (3)(B). We find that the Appeals officer adequately took into consideration the relevant issues petitioner raised and did not abuse her discretion.

Petitioner expressed interest in an installment agreement of $200 per month. Petitioner also informed the Appeals officer that he wished to submit a request for abatement of penalties and that he was going to have his representative contact the Appeals officer. Finally, petitioner attempted to have the Appeals officer release the liens on his home so that he could apply for an equity loan. We address each of these matters in turn.

We find the Appeals officer did not abuse her discretion in regard to petitioner's expression of interest in an installment agreement. Petitioner did not submit a written proposal for such an agreement nor a Form 656 as is requisite for an offer-in-compromise. He was not current on his tax obligations, and neither was his corporation. See *Giamelli v. Commissioner*, *supra* at 111–112 ("Reliance on a failure to pay current taxes in rejecting a collection alternative does not constitute an abuse of discretion."); *Nelson v. Commissioner*, T.C. Memo. 2009–108. Although petitioner stated he would provide verification of his and 911 Direct's compliance with tax obligations, he did not do so. In addition, the Appeals officer told petitioner that an installment agreement would not be acceptable given petitioner's equity in assets and petitioner's income from 911 Direct, as reported on Form 433–A and the P&L statement. It was proper for the Appeals officer to consider these items when determining whether to accept such an offer-in-compromise. See *Orum v. Commissioner*, 123 T.C. 1, 14 (2004), affd. 412 F.3d 819 (7th Cir. 2005); *Schropp v. Commissioner*, T.C. Memo. 2010–71.

We also find the Appeals officer did not abuse her discretion by not waiting for petitioner's representative to get in touch with her or by not waiting for petitioner to submit a written request for abatement of penalties. Petitioner failed to meet reasonable deadlines set by the Appeals officer relating to the representative and to the abatement of penalties request. This Court has found that when an Appeals officer gives a taxpayer an adequate timeframe to submit requested items, it is not an abuse of discretion to move ahead if the taxpayer fails to submit the requested items. *Shanley v. Commissioner*, T.C. Memo. 2009–17.

Petitioner represents that he attempted to get a loan but was denied outright because a tax lien had been placed on his home. It appears that on July 10, 2007, petitioner requested that the Appeals officer lift the lien so he could apply for a loan. Petitioner did not provide any evidence that he had in fact discussed obtaining a loan with a bank.

By July 10, 2007, petitioner had already violated several deadlines, including the June 14, 2007, deadline to get back to the Appeals officer about obtaining a loan against the equity in his house. Given all the circumstances, including petitioner's dilatory behavior, we find that the Appeals officer did not abuse her discretion in rejecting petitioner's request to lift the liens so that he could apply for a home equity loan. See *Shanley v. Commissioner, supra.*

C. *Balancing the Need for Efficient Collection of Taxes With Concerns of Petitioner That Collection Be No More Intrusive Than Necessary*

The final item to be considered is "whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). The Appeals officer performed a balancing test, finding that the liens and the potential levies did balance the needs of collection with the concerns of petitioner. We find the Appeals officer did not abuse her discretion in so finding. See, e.g., *Castillo v. Commissioner*, T.C. Memo. 2004–238.

While petitioner orally suggested an installment plan, he did not make a written proposal in that respect nor submit a Form 656 as a predicate to an offer-in-compromise. Therefore, the Appeals officer was presented with no concrete proposal for a collection alternative.

The Appeals officer was met with petitioner's missed deadlines and empty promises. The Appeals officer took into consideration the equity petitioner had in assets and the income his business was producing and the fact that petitioner was not current on his tax obligations. She gave petitioner an opportunity to file amended Forms 1040 and prove he was current on his tax obligations, but petitioner did neither. When she told petitioner on July 25, 2007, that she

intended to close the file, yet again she gave petitioner another chance to have his representative contact her.

Petitioner failed to promptly notify the Appeals officer when he was unable to obtain a home equity loan, failed to file amended Forms 1040, and failed to meet numerous deadlines.

## V. *Conclusion*

For the reasons discussed above, we find that the Appeals officer did not abuse her discretion in determining to sustain the tax lien and the proposed levy.

To reflect the foregoing,

*Decision will be entered for respondent.*