T.C. Memo. 2015-209

UNITED STATES TAX COURT

PRISCILLA ANN CLUES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31176-12L.                    Filed October 27, 2015.

Priscilla Ann Clues, for herself.

Susan K. Greene, for respondent.

CONTENTS

FINDINGS OF FACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

OPINION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

    1.    Clues' argument that she is not liable for the trust-fund-recovery
        penalties because Exclusive Temporaries did not have the financial
        means to pay its trust-fund taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

**[*2]** 2. Clues' argument that she is not liable for the trust-fund-recovery penalties because she did not personally benefit from the unpaid trust-fund taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

3. Clues' argument that she should not be liable for both the trust-fund-recovery penalties and the $1,411,975.34 restitution sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

4. Clues' argument that she is entitled to an income-tax deduction of $1.5 million.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

5. Clues' argument that Exclusive Temporaries paid its employment taxes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

6. Clues' argument that the IRS did not know the value of her property when it filed the notices of lien and proposed the levy in May and June 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The Appeals Office of the IRS issued a notice of determination sustaining:  (1) a proposed levy and (2) the filing of notices of lien. The levy was proposed, and the lien notices were filed, to collect trust-fund-recovery penalties from the petitioner, Priscilla Ann Clues, for failure to pay the employment taxes of Exclusive Temporaries, Inc., for 1999-2002 and 2004.  Clues timely filed a petition with the Court to challenge the notice of determination.  The Court has jurisdiction under sections 6330(d)(1) and 6320(c) of the Internal

[*3] Revenue Code of 1986, as amended.[1]  We sustain the determination of the Appeals Office.

## FINDINGS OF FACT[2]

In 1983, Clues became the sole owner of a staffing company in Houston, Texas, called Exclusive Temporaries, Inc. ("Exclusive Temporaries").  Exclusive Temporaries was an S corporation that supplied nurses to hospitals, including Ben Taub Hospital and LBJ Hospital, both of which were operated by Harris County, Texas.  Clues was the president of Exclusive Temporaries.

Clues testified that in 2004 she made a $1.5 million payment on behalf of Exclusive Temporaries to a barrister in South Africa named Valikazi and that in exchange for the payment Valikazi agreed to make arrangements to recruit nurses from South Africa, train them, and transport them to the United States.  We do not

---

[1]All references to sections are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times.

[2]All facts stipulated by the parties are found as facts by the Court, even if not repeated in this part of the opinion.

**[*4]** make a finding that the testimony is true.[3]  It is unnecessary to do so because even if the payment was made as Clues described, it would not affect our decision.

In 2009, Clues was indicted in the U.S. District Court for the Southern District of Texas ("the District Court") on 20 counts of criminal charges under section 7201, one count each for the 20 calendar quarters in the years 1999, 2000, 2001, 2002, and 2004.[4]

On February 1, 2010, Clues signed a plea agreement with an Assistant U.S. Attorney.  As part of the plea agreement:

---

[3]The testimony appears inconsistent with the plea agreement that Clues signed in 2010 to resolve criminal tax charges against her.  As part of the plea agreement (other parts of which are described below) she agreed that if the case were to proceed to trial, among the "facts" that would be offered by the United States to establish Clues' guilt would be:  "In 2004, during the IRS civil audit of employment taxes of ETI [Exclusive Temporaries], Clues wired-transferred approximately $1.3 million of ETI's funds out of the United States in order to evade the employment taxes owed by ETI for the years in the indictment [1999-2002 and 2004]."

[4]Sec. 7201 provides:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title [the Internal Revenue Code of 1986, as amended, which is title 26 of the U.S. Code] or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

- Clues pleaded guilty to count 8 of the indictment that she willfully attempted to evade and defeat the payment of employment taxes owed by Exclusive Temporaries for the fourth quarter[5] of 2000 in violation of section 7201.

- The United States agreed that it would not prosecute Clues "any further on the information the United States presently has."

- The United States agreed that "the total amount of restitution owed in this case" was $1,411,975.34.

- Clues agreed to pay restitution to the IRS of $1,411,975.34.

- Clues agreed to the District Court's ordering her as a condition of supervised release to pay restitution to the IRS of $1,411,975.34.

- Clues agreed that any fine or restitution imposed by the District Court would be due and payable immediately.

- Clues agreed "not to file any claim for refund of taxes, interest, or penalties represented by the restitution paid in this case on her own behalf or on behalf of Exclusive Temporaries, Inc., even if the ultimate civil liability that defendant [Clues] owes turns out to be less than the amounts paid in restitution." She also agreed not to "file any

---

[5]Employment taxes are reported and paid quarterly.

[*6] action in a U.S. district court, in the U.S. Tax Court, or in the U.S. Claims Court seeking a refund or other recovery of the amounts paid in restitution in this criminal case, even if the ultimate civil liability that defendant owes turns out to be less than the amount paid in restitution."

- Clues agreed that if the case were to proceed to trial one of the "facts" that would be offered by the United States to establish her guilt would be: "The relevant conduct in this case and the restitution owed to the IRS in this case is $1,411,975.34, which is the total amount of employment taxes owed to the United States by ETI [Exclusive Temporaries] on all four quarters of 1999, 2000, 2001, 2002, and 2004."

- Clues agreed that if the case were to proceed to trial, among the "facts" that would be offered by the United States to establish her guilt would be that for 1999, 2000, 2001, 2002, and 2004 she failed to file quarterly Forms 941[6] for Exclusive Temporaries and did not pay

---

[6]Form 941, Employer's Quarterly Tax Return, is the quarterly form used by employers to report employment taxes to the IRS.

**[\*7]**     any employment taxes for those quarters "except for a few partial payments made during 1999."

On June 21, 2010, the District Court imposed a judgment on Clues. The judgment adjudicated that Clues was guilty of the offense described in count 8 of the indictment. The judgment dismissed the remaining counts of the indictment on motion of the United States. As part of the judgment the District Court imposed a sentence consisting of three elements: (1) imprisonment of 37 months, (2) supervised release of three years following release from imprisonment, and (3) criminal monetary penalties. The judgment stated that the "total criminal monetary penalties" consisted of the following: (1) a "special assessment" of $100, which the judgment "remitted" because the District Court found that it was unlikely that the assessment could be collected, (2) no fine, and (3) restitution to the IRS of $1,411,975.34. In addition, the judgment stated that Clues was required to pay interest on restitution unless she paid the restitution before the 15th day after the date of judgment, pursuant to 18 U.S.C. section 3612(f) (2006). The judgment stated that the "total criminal monetary penalties" had to be paid under the schedule of payments on sheet 6 of the judgment.[7] The schedule of

---

[7]The judgment also stated: "All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g)."

[*8] payments on sheet 6 of the judgment stated that "payment of the total criminal monetary penalties are due as follows":

> A ☒ Lump sum payment of $1,411,975.35 due immediately, balance due * * * in accordance with * * * ☒ D * * * below; * * *
>
> D ☒ Payment in equal monthly installments of $500 over a period of 35 months, to commence 30 days after release from imprisonment to a term of supervision; * * *

The schedule of payments also stated: "Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment."

On June 21, 2010, Clues was taken into custody to serve her sentence. She was incarcerated at the federal prison camp in Bryan, Texas.

On September 3, 2010, Clues made a $100 restitution payment to the District Court. This was the first of 13 payments that Clues made to the District Court. The parties have stipulated that the first four payments were "restitution payments". They did not make a similar stipulation as to the other nine payments.

On April 6, 2011, the IRS credited $100 to Clues' account for her trust-fund-recovery penalty for the first quarter of 1999. The entry in the IRS's records states that the credit was a "penalty adjustment * * * Due to Payment by Related Business Entity." The trial record contains no other information about this $100

[*9] credit.  We assume, for the purpose of this opinion, that this $100 credit is unrelated to Clues' restitution payment of $100 made on September 3, 2010.[8]

On February 2, 2012, the IRS revenue officer in charge of collecting the trust-fund-recovery penalties from Clues had a telephone conversation with Clues to gather information about her assets.

On February 16, 2012, the IRS revenue officer had another telephone conversation with Clues to gather information about her assets.

Also on February 16, 2012, the IRS hand-delivered a Letter 1153, Trust Funds Recovery Penalty Letter, to Clues at the federal prison camp in Bryan.  The Letter 1153 informed Clues that the IRS was proposing to assess trust-fund-recovery penalties for her failure to pay to the IRS the trust-fund taxes owed by Exclusive Temporaries.  The Letter 1153 informed Clues that if she did not agree with the penalties, she could appeal the proposed assessment in writing within 60 days.  The Letter 1153 gave Clues instructions on how to make such an appeal.

---

[8]The IRS represented to us that its policy is to credit Clues' initial restitution payments against unpaid non-trust-fund employment taxes, not against trust-fund-recovery penalties.  Under this policy, the IRS would not have recorded the September 3, 2010 restitution payment as a credit against Clues' trust-fund-recovery penalties.

**[*10]** On March 30, 2012, Clues sent the IRS a Form 2751, Proposed Assessment of Trust Fund Recovery Penalty, consenting to the assessment and collection of the trust-fund recovery penalties for 1999-2002 and 2004.

On April 6, 2012, the IRS received the Form 2751.

On April 16, 2012, the IRS assessed the trust-fund-recovery penalties against Clues for 1999-2002 and 2004.

On May 31, 2012, the IRS sent Clues a notice that it intended to levy to collect the trust-fund-recovery penalties for 1999-2002 and 2004. The notice stated that Clues could request a collection-review hearing with the IRS's Appeals Office.

On June 12, 2012, the IRS filed notices of lien against Clues' properties in Brazoria County, Texas, and Harris County, Texas, to collect the trust-fund-recovery penalties for 1999-2002 and 2004.

Also on June 12, 2012, the IRS sent Clues notices that it had filed notices of lien against Clues' properties in Brazoria County and Harris County to collect the trust-fund-recovery penalties for 1999-2002 and 2004. These June 12, 2012 notices stated that Clues could request a collection-review hearing with the Appeals Office.

[*11] On June 25, 2012, Clues' account at the Federal Bureau of Prisons was charged $15.72 for a payment to the IRS. The IRS credited this payment to Clues' account for her trust-fund-recovery penalty for the first quarter of 1999.

On June 29, 2012, Clues mailed the IRS a request for a collection-review hearing with respect to the proposed levy and the filed notices of lien. In her request, Clues stated that she could not pay the trust-fund-recovery penalties because she was in prison, had little income, and was in bad health. In her request, Clues indicated that she had made a $15.72 payment to the IRS from her prison account.

On August 9, 2012, Clues made a $7.56 payment to the IRS from her prison account. The IRS credited this payment to Clues' account for her trust-fund-recovery penalty for the first quarter of 1999.

On August 30, 2012, Clues made a $7.80 payment to the IRS from her prison account. The IRS credited this payment to Clues' account for her trust-fund-recovery penalty for the first quarter of 1999.

On September 4, 2012, the Appeals Office wrote Clues to inform her that it would not consider alternatives to collection action unless she sent a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, within 14 days.

[*12] On September 14, 2012, Clues sent the Appeals Office a collection-information statement giving information about the values of her assets.

On September 27, 2012, Clues was transferred from the federal prison camp in Bryan, Texas, to the Leidel Residential Reentry Center, a halfway house in Houston, Texas.

On October 2, 2012, the Appeals Office wrote a letter to Clues stating that it had scheduled a meeting for October 16, 2012, at 10 a.m., in Houston and that this meeting would be her primary opportunity to discuss the reasons she disagreed with the collection actions and to discuss alternatives to collection actions. Clues was allowed to leave Leidel Residential Reentry Center temporarily to attend the meeting in Houston.

On October 16, 2012, the Appeals Office had the scheduled meeting with Clues. At the meeting, Clues told the Appeals Office that she was in the process of looking for employment, that the date that she would be placed in home detention was November 4, 2012, and that if she could not find a job, she would enroll in the Culinary Institute and work on her computer skills. At the meeting, Clues questioned why she should have to pay $500 per month of restitution and also pay the trust-fund-recovery penalties. In response, the Appeals Office told her that she had to pay $500 monthly to the District Court, as required by the

[*13] criminal judgment, and that, in addition, the IRS could collect from her for the civil penalties.

On November 5, 2012, Clues was permanently released from the Leidel Residential Reentry Center.

On November 21, 2012, the Appeals Office issued a notice of determination sustaining the proposed levy and the filing of the lien notices. The notice of determination stated that Clues' request to declare her account currently not collectible was denied because she owned various pieces of real property. Specifically, the notice of determination stated that Clues owned a homestead in Houston with equity of $5,000, a property in Alvin, Texas, with equity of $33,000, a property in Decatur, Georgia, another property in Houston valued at $100,000, and a lot in Brazoria County, Texas, that some of these properties were held by "alter ego" entities, and that the "revenue officer estimates the total value of the taxpayer's real property is less than $500,000." The notice of determination stated that the filing of the lien notices was necessary to protect the government's interest in Clues' real property. The notice of determination stated that the proposed levy was necessary to collect valid, unpaid liabilities. The notice of determination stated: "It was explained that she must pay the $500.00 for 35 months to the U.S. District Clerk as stated in the criminal judgment. In addition, the IRS may collect

**[\*14]** from her and apply the funds to the civil liabilities." The notice of determination stated that the Appeals Office had verified through "[a]ccount transcripts" that balances were due when the IRS had issued the notices of lien filings and the notice proposing a levy.

On December 21, 2012, Clues filed the petition with the Tax Court. She was a resident of Texas when she filed the petition.

On March 8, 2013, Clues made a $50 restitution payment to the District Court. This was the second of 13 payments that Clues made to the District Court.

On April 12, 2013, Clues made a $50 restitution payment to the District Court. This was the third of 13 payments that Clues made to the District Court.

On May 31, 2013, Clues made a $100 restitution payment to the District Court. This was the fourth of 13 payments that Clues made to the District Court. (To explain why she paid only $100, Clues testified that the District Court had reduced her monthly restitution amount from $500 to $100. She did not testify when this reduction occurred. Nor did she explain why the prior two payments were for $50.[9])

---

[9]We need not determine whether the monthly payment was indeed reduced by the District Court because this statement, if true, would not affect our decision.

**[*15]**  A record dated June 27, 2013, from the District Court shows that Clues had made four restitution payments as of that date:  $100 on September 3, 2010, $50 on March 8, 2013, $50 on April 12, 2013, and $100 on May 31, 2013.  The District Court's record also showed the following amounts in relation to Clues' only "debt", which was referred to in the record as "VICTIM RESTITUTION w/ Interest":

|  |  |
|---|---|
| Total Owed | $1,411,975.34 |
| Total Collected | 300.00 |
| Total Outstanding | 1,411,675.34 |

Clues made the remaining 9 of 13 payments to the District Court as follows:

| Date | Payment | Amount |
|---|---|---|
| June 28, 2013 | 5 of 13 | $125 |
| July 31, 2013 | 6 of 13 | 150 |
| Aug. 30, 2013 | 7 of 13 | 100 |
| Sept. 25, 2013 | 8 of 13 | 100 |
| Oct. 24, 2013 | 9 of 13 | 100 |
| Nov. 26, 2013 | 10 of 13 | 100 |
| Dec. 30, 2013 | 11 of 13 | 100 |
| Jan. 31, 2014 | 12 of 13 | 100 |
| Feb. 27, 2014 | 13 of 13 | 100 |

On July 1, 2014, this case was tried in Houston, Texas.

**[\*16]**                                     OPINION

An employer is required to pay three types of federal employment taxes. First, an employer must pay the employer share of the FICA[10] tax. Sec. 3111(a) and (b). Second, an employer must withhold the employee share of the FICA tax from its employees' wages and pay these withheld amounts to the IRS. Sec. 3102(a) and (b). Third, an employer must withhold its employees' income taxes from its employees' wages and pay these withheld amounts to the IRS. Secs. 3402(a)(1), 3403. All three types of employment taxes are reported on Form 941, and paid, quarterly. Sec. 6151(a); secs. 31.6011(a)-4(a)(1), 31.6011(a)-1(a)(1), 31.6071(a)-1(a)(1), Employment Tax Regs. The second and third types of employment taxes--FICA withholding and income-tax withholding--are referred to as "trust-fund" taxes because the employer is required to place the amounts withheld from wages in a special trust fund for the benefit of the government before paying the amounts to the IRS. Sec. 7501(a); Slodov v. United States, 436 U.S. 238, 242-243 (1978). If the employer fails to pay trust-fund taxes to the IRS, the persons responsible for paying the taxes are personally liable for the amounts under section 6672, provided that those persons "willfully" failed to pay over the taxes. Slodov, 436 U.S. at 244-245. The liability imposed by section 6672 is

_____

[10]FICA refers to the Federal Insurance Contributions Act. Secs. 3101-3128.

**[\*17]** sometimes referred to as the trust-fund-recovery penalty. Weber v.

Commissioner, 138 T.C. 348, 357-358 (2012). The trust-fund-recovery penalty is

assessed and collected in the same manner as a tax. Sec. 6671(a). Before the IRS

can levy to collect a tax, and after the IRS has filed a notice of lien to collect a tax,

the IRS must offer the person against whose property the liability is to be collected

a collection-review hearing with its Appeals Office. Secs. 6320(a)(1), 6330(a)(1).

At the hearing, the Appeals Office must "obtain verification" that "the

requirements of any applicable law or administrative procedure have been met."

Sec. 6330(c)(1). At the hearing, the person may raise any relevant issue relating to

the unpaid tax or the collection action. Sec. 6330(c)(2)(A). The issues raised may

include challenges to the appropriateness of the collection action. Sec.

6330(c)(2)(A)(ii). The issues raised may also include challenges to the existence

or amount of the underlying tax liability, but only if the person did not have an

opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). After the hearing,

the Appeals Office must make a determination that takes into consideration: (1)

the verification regarding the applicable law or administrative procedure, (2) the

issues raised by the person at the hearing, and (3) "whether any proposed

collection action balances the need for the efficient collection of taxes with the

legitimate concern of the person that any collection action be no more intrusive

[*18] than necessary." Sec. 6330(c)(3). After the Appeals Office has made the determination, the person can petition the Tax Court for review of the determination. Sec. 6330(d)(1). In such an appeal, we review de novo (i.e., anew) any determination of the Appeals Office as to the underlying tax liability that is properly at issue. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). As to other matters, we review the determination of the Appeals Office for abuse of discretion, id. at 182--that is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law, Giamelli, 129 T.C. 107, 111 (2007).

Clues argues that the Appeals Office made six errors in its determination. We discuss these six alleged errors below in parts 1, 2, 3, 4, 5, and 6, respectively. We conclude that the Appeals Office did not err.

1. Clues' argument that she is not liable for the trust-fund-recovery penalties because Exclusive Temporaries did not have the financial means to pay its trust-fund taxes

Clues argues that she should not be liable for the trust-fund-recovery penalties because Exclusive Temporaries' alleged payment of $1.5 million to recruit South African nurses made it impossible for Exclusive Temporaries to pay the trust-fund taxes to the IRS. Clues contends that she did not know that Exclusive Temporaries had any unpaid employment-tax liabilities until the IRS

[*19] audit in 2004 and after it had made the alleged payment of $1.5 million and that by then it did not have the money to pay the liabilities. The IRS responds that a $1.5 million payment made in 2004 would not have impaired Exclusive Temporaries' financial position during most of the periods at issue (1999-2002 and 2004). The IRS further contends that Clues cannot challenge her liability for the trust-fund-recovery penalties because first, she had a prior opportunity to make such a challenge when she received the Letter 1153, and second, she did not make such a challenge at the collection-review hearing. Clues responds that the Letter 1153 had not been personally delivered to her because she "had to get it through her counselor", meaning her prison counselor. She argues that even if the Letter 1153 was personally delivered to her, she did not have access to legal counsel in prison to help her respond to the Letter 1153. Clues also contends that she did not challenge her liability for the trust-fund-recovery penalties at the collection-review hearing because the Appeals Office failed to help her present her claim. The IRS contends that legal representation is not necessary to appeal the assessment of penalties in response to a Letter 1153 and that the Appeals Office was required only to consider issues raised by Clues at the collection-review hearing, not to help her present these issues.

[*20] In a collection-review hearing regarding actions to collect the trust-fund-recovery penalty, the person allegedly liable for the penalty may be entitled to challenge the existence or amount of the penalty liability. See sec. 6330(c)(2)(B); Mason v. Commissioner, 132 T.C. 301, 320-321 (2009). However, the person cannot challenge the existence or amount of the penalty liability if the person had a prior opportunity to do so. Sec. 6330(c)(2)(B). If there was such a prior opportunity, the Tax Court lacks jurisdiction to consider the existence or amount of the penalty liability when reviewing the determination of the Appeals Office. Pough v. Commissioner, 135 T.C. 344, 349 (2010). A person who has received a Letter 1153, which notifies the person of the opportunity to administratively appeal the penalty, has had a prior opportunity to challenge the existence or amount of the trust-fund-recovery penalty. Id. Clues stipulated that the IRS hand-delivered a Letter 1153 to her in the federal prison camp in Bryan, Texas. Although at trial she appeared to retract this stipulation, testifying that the Letter 1153 was delivered to her only indirectly through her prison counselor, what matters is that she received the letter. See id. Having received the letter, Clues had a prior opportunity to contest the penalties. Id. That she did not have legal counsel in prison did not deprive her of this prior opportunity.

**[*21]** 2.     Clues' argument that she is not liable for the trust-fund-recovery penalties because she did not personally benefit from the unpaid trust-fund taxes

Clues argues that she should not be liable for the trust-fund-recovery penalties because she did not personally benefit from the trust-fund taxes that Exclusive Temporaries failed to pay over to the IRS. Clues asserts that she received no salary as president of the company, that she put all the company's money back into its business, and that she did not receive the alleged $1.5 million payment. Clues' argument that she did not benefit from her failure to pay the trust-fund taxes appears to be an attempt to challenge the existence or amount of her liability for the trust-fund-recovery penalties. Because the Letter 1153 afforded her a prior opportunity to make such a challenge, we do not have jurisdiction to consider it. See id.

3.     Clues' argument that she should not be liable for both the trust-fund-recovery penalties and the $1,411,975.34 restitution sentence

Clues argues that she should not be liable for both the trust-fund-recovery penalties and the $1,411,975.34 criminal-restitution sentence.[11] The IRS responds

---

[11]Although the judgment of the District Court seems to require Clues to pay $1,411,975.34 and make payments of $500 per month, the IRS and Clues assume that the total restitution amount is $1,411,975.34 and that the monthly payments count against this $1,411,975.34 total. This assumption also appears to be reflected in the record of the District Court dated June 27, 2013.

**[*22]** that there is no danger of double collection because of the way it will account for the restitution payments. It contends that by policy it will apply the restitution payments first to the non-trust-fund employment taxes of Exclusive Temporaries (i.e., the employer share of FICA), and that, once these taxes have been paid, any further restitution payments will be applied to the trust-fund taxes of Exclusive Temporaries and will reduce the trust-fund-recovery penalties that have been assessed against Clues.[12] The IRS further contends that if it accidentally collects the same amount twice, once as trust-fund tax, and once as trust-fund-recovery penalty, it will refund Clues that amount. Thus, the IRS argues, it will not collect the trust-fund taxes of Exclusive Temporaries and the trust-fund-recovery penalties imposed on Clues. Clues responds that the plea agreement bars her from seeking a refund. The IRS contends that although the plea agreement bars Clues from seeking a refund of amounts paid as restitution, the plea agreement does not prevent her from seeking a refund of trust-fund-recovery penalties.

---

[12]This policy may explain why the 13 payments that Clues made to the District Court, totaling $1,275, are not reflected in the IRS's records for Clues' trust-fund-recovery-penalty accounts. The parties have stipulated that the first four payments were restitution payments (although they have made no such stipulation about the nature of the remaining nine payments.) As restitution, the $1,275 in payments would have been applied by the IRS against Exclusive Temporaries' non-trust-fund employment taxes pursuant to the policy.

**[\*23]** Even if we assume (without deciding) that there is potential for double collection,[13] we cannot say that the Appeals Office erred in sustaining the proposed levy and the filing of the lien notices. The Appeals Office's actions in this regard are reviewed by the Tax Court for abuse of discretion. See Goza v. Commissioner, 114 T.C. at 181-182. The restitution sentence of the District Court is a method of collection different than the lien and levy remedies available to the IRS. One method may succeed where the other may fail. Indeed, the restitution sentence has already proven inadequate. The $1,411,975.34 restitution payment was due on June 21, 2010. Over two years later, as of the collection-review hearing in October 2012, Clues had paid only $100.[14] Under these circumstances, the IRS did not err in resorting to other means of collection.

---

[13]No double collection has yet occurred. As of the collection-review hearing, Clues had paid only $100 of the $1,411,975.34. This $100 payment, consistent with IRS policy, was applicable only to the non-trust-fund portion of Exclusive Temporaries' employment tax liability. It did not count against the trust-fund portion. Furthermore, the IRS had collected only $31.08 ($15.72 + $7.56 +$7.80) in trust-fund-recovery penalties.

[14]Clues had made the $100 restitution payment on September 3, 2010. After the hearing, Clues made an additional $1,175 in payments.

**[\*24]** 4.    Clues' argument that she is entitled to an income-tax deduction of $1.5 million

Clues argues that the alleged $1.5 million payment to recruit South African nurses was a deduction against Exclusive Temporaries' income and that the deduction passed through to her as the S corporation's sole shareholder. The IRS responds that the corporation's income was not an issue before the Appeals Office. We agree with the IRS. What Clues seeks is a deduction against her own income-tax liability. An S corporation such as Exclusive Temporaries is not subject to the income tax. Sec. 1363(a). Its taxable income is computed, sec. 1363(b), and its income, deductions, and losses are passed through to its shareholders, sec. 1366. Thus, a deduction or loss against Exclusive Temporaries' income would conceivably reduce Clues' income-tax liability.

The Tax Court in a collection-review case has jurisdiction to determine only the "underlying tax liability". Sec. 6330(c)(2)(B). The Court has held that the "underlying tax liability" means the amounts that are the subject of the IRS's collection activities. Katz v. Commissioner, 115 T.C. 329, 338-339 (2000) (construing pre-2006 section 6330(d)(1)). The liabilities the IRS seeks to collect from Clues are not income tax liabilities but trust-fund-recovery penalties. The two are distinct and unrelated. See Weber v. Commissioner, 138 T.C. at 372

**[\*25]** (2012).  The Court does not have jurisdiction to consider issues related to the amount of Clues' income-tax liability.

5.    Clues' argument that Exclusive Temporaries paid its employment taxes

Clues argues that Exclusive Temporaries filed quarterly employment tax returns for all quarters for which she was assessed the trust-fund-recovery penalties, and that it wrote a check each quarter that fully paid its employment-tax liabilities.  The IRS contends that Clues did not raise this issue at the collection-review hearing.  Furthermore, the IRS contends that Exclusive Temporaries failed to file the returns and pay its employment taxes.  On cross-examination Clues admitted that Exclusive Temporaries did not pay its employment taxes for 1999-2002 and 2004.

We assume (without deciding) that if Exclusive Temporaries had paid its employment taxes it would have been an error for the Appeals Office to sustain collection actions to collect the trust-fund-recovery penalties from Clues. However, we reject the factual predicate that Exclusive Temporaries paid its employment taxes.  Although Clues testified that Exclusive Temporaries had paid its employment taxes, we find this testimony incredible because:  (1) this testimony was later recanted by Clues, (2) the testimony is unsupported by any documentary evidence, and (3) the testimony is inconsistent with various facts in

[*26] the record (for example, Clues' plea agreement to make restitution of Exclusive Temporaries' unpaid employment taxes).

6. Clues' argument that the IRS did not know the value of her property when it filed the notices of lien and proposed the levy in May and June 2012

Clues argues that the IRS did not know the value of her property when it filed the notices of lien and proposed the levy in May and June of 2012. Clues points out that it was not until September 2012 that she gave the Appeals Office a collection-information statement estimating the value of her assets. The IRS argues that the value of the taxpayer's property has no bearing on whether the IRS is initially entitled to file a notice of lien on the property or propose a levy.

A taxpayer (or in this case, someone liable for the trust-fund-recovery penalty) may request that a liability be designated currently not collectible where, on the basis of the taxpayer's assets, equity, income, and expenses, the taxpayer has no apparent ability to make payments on the outstanding liability. See Fangonilo v. Commissioner, T.C. Memo. 2008-75, slip op. at 9. Although Clues had little income, she had, according to the information available to the Appeals Office, up to $500,000 in assets. Therefore, the Appeals Office's refusal to treat Clues' liability as currently not collectible was not an abuse of discretion. It is not relevant that the Appeals Office had access to more information about the value of

[*27] Clues' assets at the collection-review hearing than did the IRS when it proposed the levy and filed the notices of lien.  See sec. 6331(f); Cox v. Commissioner, 126 T.C. 237, 256 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008).

None of the six errors alleged by Clues has merit.

To reflect the foregoing,

Decision will be entered for

respondent.