T.C. Memo. 2017-13

UNITED STATES TAX COURT

TYREE PHILLIPS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24212-15L.                          Filed January 11, 2017.

James G. Steele, III, for petitioner.

Deborah Aloof, for respondent.

MEMORANDUM OPINION

LAUBER, Judge:  In this collection due process (CDP) case petitioner seeks

review pursuant to section 6330(d)(1)[1] of the determination by the Internal Reve-

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2] nue Service (IRS or respondent) to uphold a notice of intent to levy. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his action in sustaining the proposed levy was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached affidavits and exhibits. See Rule 121(b). As of January 1, 2015, petitioner had assessed income tax liabilities of approximately $26,000 for tax years 2007 through 2010. In an effort to collect these unpaid liabilities, the IRS on January 5, 2015, issued petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing. He timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioner checked the following boxes on that form: "Installment Agreement" and "I Cannot Pay Balance," adding an explanatory note that he was "willing to work out a lower balance."

On June 1, 2015, settlement officer (SO) Stork from the IRS Office of Appeals sent petitioner a letter scheduling a telephone CDP hearing for July 7, 2015. That letter informed petitioner that consideration of collection alternatives would require: (1) a completed Form 433-A, Collection Information Statement for Wage

**[*3]** Earners and Self-Employed Individuals; (2) signed tax returns for tax years 2011 through 2014, which petitioner had not then filed; and (3) if petitioner wished to make an offer-in-compromise (OIC), a completed and signed Form 656, Offer in Compromise.

Petitioner called SO Stork on June 10, 2015, and requested a face-to-face CDP hearing. SO Stork explained that he would be eligible for a face-to-face hearing only after submitting the documents listed above. On June 17, 2015, SO Stork received from petitioner a written request for a face-to-face hearing and a partially completed Form 433-A. That same day, SO Stork called petitioner and left a message reminding him that he needed to file (and submit copies of) income tax returns for 2011-14. Petitioner called back the following day and assured SO Stork that he was working on completing the returns.

Petitioner did not complete or file those returns, and his CDP hearing proceeded as scheduled via telephone on July 7, 2015. During the hearing petitioner did not challenge his underlying tax liability for any year at issue or dispute the issuance of the levy notice. Instead, he inquired about an installment agreement, proposing monthly $50 payments. SO Stork responded by reiterating that as a precondition for execution of an installment agreement, petitioner had to file the four outstanding tax returns.

**[\*4]**  Petitioner replied that a professional return preparer would charge him $450 to prepare each return and that this expenditure was beyond his means, given his child support obligations and his recent shift to a lower paying job.  SO Stork then suggested that petitioner explore seeking currently-not-collectible (CNC) status for his account.  When petitioner expressed interest in this option, SO Stork asked him to submit copies of his bank statements and paystubs and evidence of his monthly rent expense.  SO Stork gave petitioner a deadline of July 14, 2015, one week from the CDP hearing, to supply these documents.

That week came and went, as did another, without those documents showing up at SO Stork's desk.  On July 21, 2015, petitioner called SO Stork, explaining that "printer problems" had held him up and promising to fax the needed documents within two days.  Days stretched into weeks, without a single document or any additional word from petitioner.  Finally, on August 14, 2015, roughly five weeks after the CDP hearing, SO Stork closed the case, and on August 20, 2015, the IRS sent petitioner a notice of determination sustaining the levy.

While residing in Maryland, petitioner timely petitioned this Court for review.  Proceeding pro se, he stated in his original petition that he would "like to dispute the decision" of the Appeals Office.  In amending that petition, while still unrepresented, he elaborated:  "I agree to pay but need a payment plan I can af-

**[*5]** ford." Now represented by counsel, petitioner objects to respondent's motion for summary judgment.

Discussion

I.     Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). The burden of proving this rests on the moving party. <u>Bond v. Commissioner</u>, 100 T.C. 32, 36 (1993). But where the moving party makes and properly supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading." Rule 121(d). Instead, he must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. <u>Ibid.</u>

In objecting to respondent's motion for summary judgment, petitioner challenges the adequacy of the administrative record, asserting that "respondent has sole custody of the administrative record and has only submitted to the court what respondent deems to be the 'relevant documents.'" But petitioner has not identi-

**[\*6]** fied a single document or piece of evidence outside the administrative record that allegedly warrants our consideration. Similarly, without specifically disputing anything in the record, petitioner urges that "respondent's presentation * * * misstates certain facts, omits relevant information, and fails to convey inadequacies that occurred" during SO Stork's consideration of the case. This objection likewise rests on vague generalities.

In considering respondent's motion for summary judgment, we decline "to ferret out the facts" that counsel have not brought to our attention. See Cray Commc'ns Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 396 (4th Cir. 1994). Petitioner has not identified with specificity any issue of fact as to which there is a material dispute. In light of respondent's motion, SO Stork's supporting affidavit, and petitioner's objection, we conclude that no material facts are in dispute and that this case may be adjudicated summarily.

II.     Standard of Review

Petitioner did not contest his underlying tax liabilities for 2007-10 in his CDP hearing request, at the CDP hearing, or in his petition. Indeed, in amending his petition, he signaled his acceptance of those liabilities by conveying his agreement to pay them eventually. Because petitioner's underlying tax liabilities for tax years 2007 through 2010 are not before us, we review the IRS' determination for

**[\*7]** abuse of discretion only.  See <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 21 (1st Cir. 2006).

Respondent contends that petitioner "waived his right to argue abuse of discretion because he did not raise the issue in the petition," stating simply that he wanted an affordable payment plan.  Rule 331(b)(4) does require "[c]lear and concise assignments of each and every error which the petitioner alleges to have been committed in the notice of determination."  But Rule 31(d) requires that all pleadings "be so construed as to do substantial justice," and "a petition filed by a pro se litigant should be liberally construed."  <u>Gray v. Commissioner</u>, 138 T.C. 295, 298 (2012), <u>supplemented by</u> 140 T.C. 163 (2013).  Petitioner's original petition, filed when he was unrepresented, expressed his intention to dispute the decision of the IRS Appeals Office.  We liberally construe that expression to include an allegation that SO Stork abused his discretion in sustaining the levy.

III.  <u>Analysis</u>

In deciding whether SO Stork abused his discretion in sustaining the levy, we consider whether he:  (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant

**[*8]** issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

It is clear from our review of the record that SO Stork analyzed the transcript of petitioner's account and properly verified that the requirements of applicable law and administrative procedure were followed. The notice of determination recounts, and petitioner does not dispute, that the IRS properly assessed the amount for each tax year at issue and mailed a notice and demand for payment to petitioner's last known address. The sole issue petitioner raised centered on his eligibility for one or more collection alternatives: an installment agreement, an OIC, and CNC status.

Petitioner in his Form 12153 expressed interest in a collection alternative and during the CDP hearing orally requested an installment agreement. SO Stork responded during the hearing by reminding him that an installment agreement could not be considered until he filed tax returns for 2011-14, a condition that had first been communicated to him five weeks previously. That condition remained unfulfilled as of August 14, 2015, when SO Stork closed the case.

**[*9]** An SO does not abuse his discretion in rejecting an installment agreement when a taxpayer is not in compliance with his tax obligations for tax years after the subject years. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007). Further, "[t]here is no requirement that the Commissioner wait a certain amount of time before making a determination as to a proposed levy." Gazi v. Commissioner, T.C. Memo. 2007-342, 94 T.C.M. (CCH) 474, 479 (2007). In Bailey v. Commissioner, T.C. Memo. 2016-94, we concluded that an SO did not abuse his discretion by giving the taxpayer a total of five weeks to file and submit delinquent tax returns for four years. SO Stork gave petitioner more than 10 weeks to submit a comparable volume of documents.

When stating in his CDP hearing request that he was "willing to work out a lower balance," petitioner arguably expressed interest in an OIC. SO Stork's letter of June 1, 2015, made clear that a completed Form 656 is a prerequisite for considering an OIC, but petitioner never submitted that form. "There is no abuse of discretion when Appeals fails to consider an offer-in-compromise when a Form 656 was not submitted." Gentile v. Commissioner, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77 (2013), aff'd, 592 F. App'x 824 (11th Cir. 2014).

Petitioner seeks to distinguish Bailey and Gentile from this case by arguing that SO Stork, in suggesting that petitioner might wish to consider seeking CNC

**[\*10]** status, "[i]n effect \* \* \* persuaded petitioner not to file the outstanding returns" and "persuaded petitioner not to file Form 656." In petitioner's view, SO Stork nudged him away from submitting the documents required for consideration of an installment agreement or an OIC, and SO Stork should thus be precluded from basing his determination on the absence of those submissions.

This argument calls to mind the adage that no good deed goes unpunished. As petitioner acknowledges, SO Stork offered the suggestion of CNC status only after petitioner had represented that he could not afford the cost of having the missing tax returns professionally prepared. SO Stork mentioned this option as a possible solution to petitioner's problem; this suggestion was clearly not the cause of petitioner's problem. SO Stork's suggestion would not have halted petitioner in his tracks if he were actually making progress in assembling the documents required for consideration of an OIC or an installment agreement. Petitioner found this suggestion attractive because he was not making such progress.

The documentation that SO Stork requested in order to consider petitioner for CNC status was quite basic--copies of his bank account statements and pay-stubs and evidence of his monthly rent expense. SO Stork ultimately gave petitioner five weeks to submit these documents, a period that we find reasonable. Petitioner tries to lay at SO Stork's door the blame for his failure to submit the re-

[*11] quired documents, urging that the SO erred by not "following up." But petitioner waited until two weeks after the initial deadline had passed before contacting SO Stork, citing "printer problems" and promising to fax the documents within the next two days. He failed to deliver them within the next four weeks.

We reject petitioner's suggestion that an IRS settlement officer has an affirmative duty to check up on a taxpayer who fails to make good on his own promise to submit documentation required to consider a collection alternative. An SO is not required to act as if he were the taxpayer's representative. Quite the contrary: We have held that when an SO "gives a taxpayer an adequate timeframe to submit requested items, it is not an abuse of discretion to move ahead if the taxpayer fails to submit * * * [them]." Pough v. Commissioner, 135 T.C. 344, 351 (2010).

We similarly find unavailing petitioner's complaint that SO Stork "did not explain the consequences that would result from petitioner's failure to submit the documentation by [the] deadline." The initial levy notice dated January 5, 2015, warned petitioner that "[i]f you don't pay the amount you owe, make alternative arrangements, or request an appeals hearing within 30 days from the date of this letter, we may take your property, or rights to property." An SO does not abuse

**[*12]** his discretion by failing to give similar prophylactic warnings at each subsequent step of the administrative process. On the record before us, we find that SO Stork in sustaining the levy properly balanced the need for the efficient collection of taxes with petitioner's legitimate concern that the collection action be no more intrusive than necessary. Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and sustain the levy.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.