# United States Tax Court

T.C. Memo. 2023-130

KEVIN F. LONG,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 16285-21L.                    Filed October 30, 2023.

————

P owes federal income tax liabilities for the years 2012–18. R filed a "Notice of Federal Tax Lien" ("NFTL") covering P's 2018 liability and sent to P a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320". P subsequently requested a collection due process ("CDP") hearing with the Internal Revenue Service Independent Office of Appeals ("IRS Appeals") to review the NFTL filing and requested as collection alternatives an offer-in-compromise ("OIC") or an installment agreement ("IA").

During the CDP hearing P submitted an OIC which R determined to reject on the basis that P's reasonable collection potential ("RCP") exceeded the amount of P's offer. R's rejection of P's OIC was thereafter reviewed by IRS Appeals as part of P's CDP hearing. Although IRS Appeals calculated P's RCP to be less than what R's personnel had previously determined, IRS Appeals and P were unable to agree on the extent of P's allowable expenses for court-ordered payments and therefore disagreed on P's RCP. IRS Appeals accordingly sustained R's rejection of P's OIC and invited P to instead propose an IA. IRS Appeals did not give P a deadline to propose an IA, and it closed the case after not receiving a response in two days. When P responded to IRS Appeals one week later, he

**[\*2]**  was informed by IRS Appeals that his CDP case had been closed. IRS Appeals thereafter issued to P a notice of determination sustaining the NFTL filing. P timely filed a petition for review in this Court.

     *Held*: IRS Appeals abused its discretion by abruptly ending P's CDP hearing two days after it decided to sustain R's rejection of P's OIC and requested that P propose an IA.

————————

*Gerard J. Levins*, for petitioner.

*Ian T. Rossi* and *Nina P. Ching*, for respondent.

### MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, *Judge*: This is a collection due process ("CDP") case brought pursuant to sections 6320(c)[1] and 6330(d), in which petitioner, Kevin F. Long, asks this Court to review the determination by the Internal Revenue Service ("IRS") Independent Office of Appeals ("IRS Appeals") to sustain the filing of a notice of federal tax lien ("NFTL") with respect to his unpaid federal income tax liability for 2018. By joint motion of the parties, this case was submitted fully stipulated under Rule 122. The facts stated below are based on the pleadings and the parties' stipulations, in which they stipulated the facts of the administrative CDP hearing and the documents generated during it to produce its record. We are therefore able to follow "the administrative record rule", *Murphy v. Commissioner*, 469 F.3d 27, 31 (1st Cir. 2006), *aff'g* 125 T.C. 301 (2005), in our review in this case. For the reasons detailed below, we hold that IRS Appeals abused its discretion because it did not give Mr. Long a meaningful opportunity to propose an installment agreement (IA) to pay his outstanding liabilities, and we will remand the case to IRS Appeals for further consideration.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., as in effect at the relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), as in effect at the relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded.

[*3]                        FINDINGS OF FACT

When he timely filed his petition, Mr. Long resided in Maine.

*Petitioner's federal income tax liabilities*

For 2012 through 2018 Mr. Long has unpaid federal income tax liabilities totaling $963,398. As of May 27, 2019, his liability for 2018—the year at issue—was $133,357.89.

*Notice of federal tax lien*

On June 20, 2019, the Commissioner filed an NFTL with the Registry of Deeds in Cambridge, Mass., covering Mr. Long's unpaid 2018 income tax liability. On June 27, 2019, the Commissioner sent to Mr. Long a "Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320". The notice advised Mr. Long of his right to request a CDP hearing with IRS Appeals by August 5, 2019, to review the NFTL filing and discuss collection alternatives.

Mr. Long timely submitted Form 12153, "Request for a Collection Due Process or Equivalent Hearing". On the Form 12153, Mr. Long checked boxes indicating that he was requesting as a collection alternative an IA or an offer-in-compromise ("OIC"). Along with his CDP hearing request, Mr. Long submitted a completed Form 656, "Offer in Compromise", based on doubt as to collectibility, by which he offered to settle his total outstanding income tax liability—$963,398—for $5,494.

As part of his OIC Mr. Long submitted Form 433–A, "Collection Information Statement for Wage Earners and Self-Employed Individuals", detailing his monthly income and expenses as well as his present assets and liabilities for the purposes of calculating his reasonable collection potential ("RCP"). Mr. Long reported that he had a total monthly income of $33,924, consisting of $20,100 in wages and $13,824 of net business income. Mr. Long further reported that he had total monthly living expenses of $33,936, including total court-ordered payments of $22,601 per month consisting of "Child Support" of $3,818, "Alimony" of $5,366, and a third item labeled "Court Ordered-Separation Agreement" of $13,416. Mr. Long further reported that he had $100 cash on hand and that he maintained a checking account with a total balance of $5,214.

Mr. Long's OIC was initially reviewed by IRS Offer Examiner Rose Ingrassia. Ms. Ingrassia reviewed Mr. Long's financial information

[*4] and determined that Mr. Long had monthly income of $33,869 (instead of the $33,924 that Mr. Long had reported on his Form 433–A) and monthly expenses of $10,122 (instead of the $33,936 that Mr. Long had reported). Ms. Ingrassia determined Mr. Long's net monthly income to be approximately $23,747. She also calculated Mr. Long's available equity in assets to be $27,397. Consequently, she rejected Mr. Long's proposed OIC on the ground that the amount offered was less than his RCP, which she determined to be $2,517,225. In her computation Ms. Ingrassia apparently disallowed all of Mr. Long's court-ordered expenses.

*CDP hearing*

Administration of Mr. Long's CDP hearing was assigned to Settlement Officer Susan Bradford. Ms. Ingrassia forwarded Mr. Long's OIC to Ms. Bradford to conduct the CDP hearing and to consider the collection alternatives that Mr. Long raised in his Form 12153. Thereafter, Mr. Long sent a letter to Ms. Bradford asserting that the offer specialist had overstated Mr. Long's net monthly income by at least $22,601. He also attached a copy of a marital settlement agreement between Mr. Long and his ex-wife which imposed financial obligations on Mr. Long. According to the settlement agreement, Mr. Long was ordered to make alimony payments of $1,248 per week and child support payments of $888 per week. Mr. Long's bank statements also showed that he was paying $4,533 in monthly tuition for his children to attend private school.

Ms. Bradford then separately considered Mr. Long's OIC and on April 29, 2021, communicated to Mr. Long an initial determination that his RCP was $714,489 (not the $2,517,225 that Ms. Ingrassia had previously determined). Ms. Bradford's initial calculation allowed the private school tuition expenses and also allowed a portion of Mr. Long's court-ordered alimony ($2,584) and child support obligations ($1,871). However, Ms. Bradford indicated to Mr. Long that "[m]ore review may be needed" to allow the foregoing expenses. She requested a response by May 6, 2021.

On May 6, 2021, Mr. Long provided Ms. Bradford with a spreadsheet containing a revised calculation of his RCP. According to the spreadsheet, Mr. Long revised his RCP to $511,929 (i.e., less than Ms. Bradford's $714,489, but more than Mr. Long's original offer of $5,494).

**[\*5]** On May 11, 2021, Ms. Bradford prepared and sent to Mr. Long an "Appeals Offer in Compromise Memorandum" ("OIC Memo"). The OIC Memo reflected that IRS Appeals had further recalculated Mr. Long's RCP to be $594,709 (i.e., more than Mr. Long's $511,929 but less than Ms. Bradford's previous $714,489), having allowed several expenses in its calculation, including $4,455 for combined alimony and child support and $4,533 for private school tuition. However, the OIC Memo also indicated that IRS Appeals preferred a partial payment installment agreement ("PPIA") as a collection alternative for Mr. Long and requested additional substantiation of certain expenses.

On May 17, 2021, Mr. Long responded to the OIC Memo with additional information regarding his expenses and insisted that IRS Appeals had overestimated his business income each month. Ms. Bradford was out of the office teaching from May 10 through May 21, and then out of the office on vacation from May 24 to May 31. On June 4, 2021, having not received a reply to his response of May 17, 2021, Mr. Long sent a follow-up letter to Ms. Bradford requesting an update on the status of his OIC.

Ms. Bradford promptly replied to Mr. Long on June 7, 2021, with another OIC Memo showing, among other things, that IRS Appeals had disallowed Mr. Long's reported monthly expense for private school tuition and had recalculated his RCP to be greater than previously calculated—i.e., $1,078,114. The revised OIC Memo indicated, however, that it was a "Draft". In her cover letter to the revised OIC Memo Ms. Bradford stated:

> There is still a CDP Lien case open, so we can discuss another collection alternative, such as an Installment Agreement.
>
> Let me know if you want to set up a time to discuss.

Ms. Bradford's June 7 memo did not set a specific deadline for Mr. Long to "let me know".

Two days later, on June 9, 2021, Ms. Bradford prepared an "Appeals Offer in Compromise Rejection Memorandum". The following day, on June 10, 2021, Ms. Bradford noted in her case activity record that there had been "[n]o contact from [Mr. Long] regarding setting up an IA based on the OIC rejection being sustained" and that she was "[c]losing case accordingly".

[*6]    On June 15, 2021 (i.e., one week after receiving Ms. Bradford's "let me know" and her revised OIC Memo showing the disallowed private school tuition expense and an accordingly higher RCP), Mr. Long responded to Ms. Bradford, urging that calculation of his RCP should include the full amount of court-ordered alimony and child support that he initially reported. That same day, however, Ms. Bradford replied "[t]he offer case has already been closed as a rejection" and that "[t]he CDP case has been written up to issue a Notice of Determination."

*Notice of determination*

On that same day—June 15, 2021—IRS Appeals issued its "Notice of Determination Concerning Collection Actions under IRC Sections 6320 or 6330 of the Internal Revenue Code", sustaining the NFTL. Specifically, the notice of determination stated in part that IRS Appeals was rejecting Mr. Long's OIC and could not consider an IA as a collection alternative because there had been no response from Mr. Long as of June 10, 2021. The notice of determination, mailed June 28, 2021, advised Mr. Long of his right to challenge the determination by filing a petition in the United States Tax Court.

*Tax Court proceedings*

On July 28, 2021, Mr. Long timely filed his petition with this Court seeking our review of IRS Appeals' determination to deny him collection alternatives and sustain the NFTL. The parties filed stipulations of fact and supporting exhibits, and they filed a Joint Motion for Leave to Submit Case Under Tax Court Rule 122, which we granted on July 5, 2022. They then filed briefs, in which the Commissioner contended we should sustain IRS Appeals' determination, and Mr. Long contended that we should remand the case for further consideration by IRS Appeals.

OPINION

I.    *General legal principles*

A.    *Collection due process procedures*

When a taxpayer fails to pay any federal income tax liability within 10 days after notice and demand, section 6321 imposes a lien in favor of the United States on all the property of the delinquent taxpayer, and section 6323(f) authorizes the IRS to file notice of that lien. However, no later than five business days after filing an NFTL, the IRS

[*7] must provide written notice of that filing to the taxpayer. § 6320(a). After receiving such notice, the taxpayer may request an administrative CDP hearing before IRS Appeals. § 6320(b)(1). At the CDP hearing, IRS Appeals must determine whether the collection action may proceed. In making that determination, the Appeals officer must consider several things specified in section 6330(c) (and made applicable to lien cases by section 6320(c)):

First, IRS Appeals must verify that the requirements of any applicable law and administrative procedure have been met by IRS personnel. § 6330(c)(3)(A). The attachment to the notice of determination sets forth Ms. Bradford's compliance with these requirements, and Mr. Long makes no challenge as to the verification requirement in his Petition. Consequently, no verification issues under section 6330(c)(1) are at issue, and we need not discuss this requirement further.

Second, IRS Appeals must consider any issues raised by the taxpayer, including proposed collection alternatives. § 6330(c)(2)(A). This case focuses on this second requirement, which we will discuss below.

Third, IRS Appeals must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." § 6330(c)(3)(C). Mr. Long did not raise intrusiveness in his request for a CDP hearing, in his Petition, or in his briefing to this Court; therefore, no issues as to "balancing" under section 6330(c)(3)(C) are at issue, and we do not discuss this requirement further.

Once IRS Appeals issues its determination, the taxpayer "may, within 30 days of a determination . . . , petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter)." § 6330(d)(1).

B.    *Tax Court Review*

Where, as here, a taxpayer does not challenge his underlying tax liability, we review determinations of IRS Appeals for abuse of discretion. *See Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Applying that abuse-of-discretion standard, we decide whether IRS Appeals' determination to sustain the NFTL was arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125

[*8] T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). We do not substitute our judgment for that of IRS Appeals but consider "whether, in the course of making its determination, the Appeals Office complied with the legal requirements of an administrative hearing." *Charnas v. Commissioner*, T.C. Memo. 2015-153, at *7.

## II. *Analysis*

As we noted above in Part I.A, IRS Appeals is required to consider at a CDP hearing any "relevant issue" raised by the taxpayer, including "the appropriateness of collection actions" and "offers of collection alternatives". § 6330(c)(2)(A), (3)(B). For the reasons we now explain, we hold that IRS Appeals failed to adequately address the collection alternatives that Mr. Long raised in the CDP hearing and therefore abused its discretion by prematurely closing his CDP hearing and issuing its notice of determination.

### A. *Conduct of the CDP hearing*

Mr. Long contends that IRS Appeals abused its discretion because it ended his CDP hearing without providing him a meaningful opportunity to propose an IA. The relevant regulations do not provide a period within which a CDP hearing must be concluded, but they do instruct the IRS to complete the hearing "as expeditiously as possible under the circumstances." Treas. Reg. § 301.6320-1(e)(3), Q&A E-9. Nevertheless, "[t]he reasonableness of the appeals officer's decision to terminate a CDP hearing must be determined in light of the entire context of the proceeding." *Murphy v. Commissioner*, 469 F.3d at 32. Because CDP hearings are designed to be a forum for considering the taxpayer's legitimate disagreement with collection actions, IRS Appeals must give "proper and fair consideration to [the] issues that [the taxpayer] raised." *Hamilton v. Commissioner*, T.C. Memo. 2022-21, at *7.

The context of this case reflects that IRS Appeals' remarkably hasty termination of the CDP hearing was arbitrary and unreasonable and therefore constitutes an abuse of discretion. As the record reflects, Mr. Long requested two collection alternatives in his Form 12153: an OIC (which he formally submitted on Form 656) and an IA. However, the correspondence in the CDP hearing between Mr. Long and IRS Appeals focused almost exclusively on Mr. Long's OIC and the computation of his RCP, and under the facts and circumstances of this case, IRS Appeals and Mr. Long followed a clear pattern of responding

[*9] between five and seven days after receiving communications from each other.

However, IRS Appeals' communication of its "Draft" revised OIC Memo dated June 7, 2021, did not include a specific deadline within which Mr. Long should respond but rather made the casual and non-urgent request to "Let me know if you want to set up a time to discuss." We think that Mr. Long and his representative had no reason to suppose that an unmentioned 2-day deadline existed. Furthermore, IRS Appeals' June 7 communication represented a significant crossroads in the CDP hearing for Mr. Long, because he needed to make a strategic decision either to continue pursuing his OIC or to instead propose an IA. Mr. Long's decision to continue discussing his OIC and RCP was not unreasonable in its context, because IRS Appeals' "Draft" revised OIC Memo disallowed a large monthly expense (private school tuition for his children) which had previously been allowed and further refused to allow the full amount of his court-ordered expenses for child support and alimony, which can be allowable expenses according to Internal Revenue Manual ("IRM") 5.8.5.22.4 (Sept. 24, 2021).[2] Mr. Long therefore had plausible arguments—even if not winning arguments—that his RCP was less than what IRS Appeals had determined it to be, and that accordingly he might still qualify for an OIC. Had Mr. Long instead chosen to propose an IA, he would have signaled to IRS Appeals that he was giving up on his pursuit of an OIC (a decision that he was apparently not ready to make).

However, despite IRS Appeals' not communicating to Mr. Long any final (non-"Draft") rejection of the possibility of an OIC nor any deadline within which to propose an IA, he was given only two days to make this significant decision. Under the facts and circumstances of this case, two days was not an adequate amount of time for Mr. Long to make this significant decision. He himself works as an employee in addition to running his own business, and he was communicating with IRS Appeals through an attorney with whom Mr. Long would have needed to consult before responding to IRS Appeals' revised OIC Memo. Furthermore, IRS Appeals' revised OIC Memo stated that it was a "Draft", thereby indicating that its determinations were not final and were potentially

---

[2] "We note that it 'is a well-settled principle that the Internal Revenue Manual does not have the force of law, is not binding on the IRS, and confers no rights on taxpayers.'" *Thompson v. Commissioner*, 140 T.C. 173, 190 n.16 (2013) (quoting *McGaughy v. Commissioner*, T.C. Memo. 2010-183, slip op. at 17). We cite its provisions to inform our analysis of whether IRS Appeals abused its discretion in following the relevant provisions of the IRM in making its determination.

[*10] subject to further revision. In the absence of a stated deadline, Mr. Long's taking one week to consult with his attorney about how to proceed and whether to continue discussing his RCP with IRS Appeals for the purposes of qualifying for an OIC or to instead abandon the OIC as a collection alternative and propose an IA was not unreasonable given the history of both his and IRS Appeals' taking approximately one week to respond to communications. Accordingly, under the facts and circumstances of this case, it was unreasonable for IRS Appeals to close Mr. Long's CDP hearing after not hearing back from him for two days after sending its revised OIC Memo and inviting him to discuss an IA.

The present situation is materially different from that in *Shanley v. Commissioner*, T.C. Memo. 2009-17. In that case we held that IRS Appeals did not abuse its discretion when it denied a taxpayer's request for more time to submit requested financial information. IRS Appeals had set a 14-day deadline for the taxpayer to submit required information, but the taxpayer failed to meet that due date, and IRS Appeals issued its notice of determination sustaining collection. The IRS's responsibility to collect taxes is a critically important government function; and where a taxpayer exercises his statutory right to interrupt that collection and receive the benefits of administrative review of it, IRS Appeals must be able to set reasonable deadlines. We do not even hold today that there are no circumstances in which an announced two-day deadline could be a proper exercise of IRS Appeals' discretion. In this case, however, Mr. Long had demonstrated commitment to cooperating with IRS Appeals, and on multiple occasions he had promptly responded to IRS Appeals' communications with requested information within the time that Appeals had given. The parties had clearly established a pattern of responding between five and seven days after receiving communications from each other, and Mr. Long had never failed to meet any deadline set by IRS Appeals for providing financial information and substantiation. IRS Appeals' last communication before closing the CDP process set no deadline for response, stated that "we can still discuss another collection alternative", and invited Mr. Long to "[l]et me know if you want to set up a time to discuss". Mr. Long responded in seven days, but unbeknownst to him, IRS Appeals had closed his case five days earlier. In the context of Mr. Long's prompt and responsive communication, we conclude that IRS Appeals' abrupt closure of the case was an abuse of its discretion.

**[*11]** B.    *The Commissioner's arguments*

The Commissioner counters that Mr. Long did not "propose an installment agreement during the CDP hearing". He highlights that Mr. Long's communications with IRS Appeals about collection alternatives during the CDP hearing focused solely on his proposed OIC and that Mr. Long never submitted a written proposal for an IA. The record reflects, however, that Mr. Long did indeed indicate in his Form 12153 that he was interested in either an IA or an OIC. Moreover, it might not be efficient for a taxpayer to pursue both an OIC and an IA simultaneously, since an OIC proposes to settle a taxpayer's entire outstanding liability for less than the full amount whereas an IA generally pays the entire liability[3] over time. Sometimes it may make sense for a taxpayer to make a specific proposal for an IA only after the parties have been unable to agree about an OIC. It is possible that a taxpayer might make cynical use of this seriatim approach simply to stretch out the CDP process (but the record here shows no indication of such an abuse), and IRS Appeals could explicitly foreclose this approach—but it did not do so here.

The Commissioner cites *Pough v. Commissioner*, 135 T.C. 344 (2010), for the proposition that "[t]he petitioner is expected to meet reasonable deadlines set by Appeals to submit requested information, and it is not an abuse of discretion to issue the determination if the petitioner fails to submit the requested items within the reasonable timeframe given by Appeals." We agree with this proposition, but it does not apply to this case for two reasons. First, no "timeframe" was in fact "given by Appeals" for Mr. Long to propose an IA. Second, the two-day window that IRS Appeals gave Mr. Long was not "reasonable", considering his need to evaluate, with his representative, IRS Appeals' responses to his criticisms of its calculation of his RCP. As we have shown, IRS Appeals did not provide Mr. Long a meaningful opportunity to propose IA terms, as IRS Appeals decided to close the case just two days after providing Mr. Long a revised OIC Memo stating that it would no longer consider an OIC as a collection alternative.

III.    *Conclusion*

IRS Appeals abused its discretion by closing Mr. Long's CDP hearing without providing him a meaningful opportunity to propose an

---

[3] A PPIA, unlike the more common IA, does involve an agreement to pay, over time, an amount less than the entire liability, i.e., a "partial payment".

[*12] IA. The facts and circumstances of this case show that both Mr. Long and IRS Appeals routinely took about one week to respond to substantive communications from the other party. Furthermore, IRS Appeals' revised OIC Memo to Mr. Long indicated that it was a draft. Mr. Long was therefore not unreasonable in assuming that he would have another week to respond. IRS Appeals' decision to close Mr. Long's CDP hearing and issue a notice of determination after receiving no response in two days was an arbitrary action with no sound basis in law or fact. Therefore, IRS Appeals abused its discretion by issuing a notice of determination without adequately addressing all collection alternatives that Mr. Long raised in his CDP hearing.

To reflect the foregoing,

*An order will be issued remanding the case to IRS Appeals for further consideration.*