# United States Tax Court

T.C. Memo. 2025-89

JOHN J. MONGOGNA AND MICHELLE L. MONGOGNA,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 18651-23L.                    Filed August 18, 2025.

————

John J. Mongogna and Michelle L. Mongogna, pro sese.

*Joseph L. Damele* and *Christopher S. Kippes*, for respondent.


MEMORANDUM OPINION

GREAVES, *Judge*: In this collection due process (CDP) case, petitioners seek review pursuant to section 6330(d)[1] of a determination made by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy related to income tax liabilities for tax years 2008 through 2015, 2017 through 2019, and 2021. Respondent moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that the settlement officer's determination to sustain the collection action was not an abuse of discretion. For the reasons set forth below, we will grant respondent's motion.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                                    *Background*

The following facts are based on the parties' pleadings, motion papers and attached exhibits, and the administrative record. Petitioners resided in Texas when they filed their petition.

Petitioners John and Michelle Mongogna filed a voluntary petition under chapter 7 of the U.S. Bankruptcy Code with the U.S. Bankruptcy Court for the Eastern District of Texas on December 8, 2020. On the bankruptcy petition, petitioners listed assets worth $382,300 and liabilities of $610,110.[2] Petitioners listed the IRS as a (1) secured creditor for tax years 2005 through 2015 with claims totaling $288,476 and (2) priority unsecured creditor for tax years 2017 through 2019 with claims totaling $17,987. Petitioners also claimed several items of exempt property which included their current residence and three vehicles. For tax years 2008 through 2015 the IRS filed a notice of federal tax lien (NFTL) at various times before petitioners filed their bankruptcy petition and informed petitioners of these liens through several notices.[3]

On March 8, 2021, the bankruptcy court entered an order of discharge under 11 U.S.C. § 727 (discharge order) for petitioners. The discharge order outlined the consequences of a bankruptcy discharge in a chapter 7 case. It stated that "no one may make any attempt to collect a discharged debt from the debtors personally." It further explained that "a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated." The discharge order informed petitioners that while some debts are discharged, other debts such as "debts for most taxes" are not. The discharge order advised petitioners to "consult an attorney to determine the exact effect of the discharge in this case."

On April 3, 2023, the IRS issued petitioners Letter 4066, Notice of Intent to Levy and Notice of Your Right to a Hearing. The notice

---

[2] All dollar amounts are rounded to the nearest dollar.

[3] On November 11, 2016, the IRS filed an NFTL for tax years 2009 and 2015. On November 15, 2016, the IRS issued petitioners an NFTL filing for those years. On November 18, 2016, the IRS filed an NFTL for tax years 2008, 2010, 2012, 2013, and 2014. On November 25, 2016, the IRS issued petitioners an NFTL filing for those years. On April 7, 2017, the IRS filed an NFTL for tax year 2011. On April 11, 2017, the IRS issued an NFTL filing to petitioners for that year.

**[*3]** stated that the "tax lien remains on your exempt and abandoned property for the following tax liabilities":

| Year | Amount Including Penalties and Interest (as of May 3, 2023) |
|---|---|
| 2005 | $13,037 |
| 2007 | 3,047 |
| 2008 | 80,627 |
| 2009 | 59,981 |
| 2010 | 92,413 |
| 2011 | 75,893 |
| 2012 | 29,291 |
| 2013 | 2,188 |
| 2014 | 8,647 |
| 2015 | 5,184 |
| 2017 | 5,207 |
| 2018 | 10,404 |
| 2019 | 4,196 |
| 2021 | 548 |

The notice informed petitioners of their right to request a CDP hearing with the IRS Appeals Office. On May 3, 2023, the IRS received petitioners' timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioners checked the boxes indicating they sought collection alternatives of an installment agreement and an offer-in-compromise. They also indicated that they could not pay the balance. They listed the periods at issue as 2005, 2007 through 2015, 2017 through 2019, and 2021.

On July 31, 2023, the IRS issued petitioners Letter 4837, Appeals Received Your Request for a Collection Due Process Hearing, which acknowledged petitioners' request for a CDP hearing. The letter listed the tax periods at issue as 2008 through 2015, 2017 through 2019, and 2021, and scheduled a telephone CDP hearing for August 31, 2023.[4] Additionally, the letter requested that petitioners submit Form 433–A,

---

[4] The periods of limitations on collection of income tax for tax years 2005 and 2007 have expired.

[*4] Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 656, Offer in Compromise, for the settlement officer to consider an installment agreement and offer-in-compromise as collection alternatives. The letter specifically informed petitioners that "[i]f your requested collection alternative is an Installment Agreement, you are required to address the equity in any asset(s) i.e. real property by attempting to get a loan or making a lump sum payment equal to the amount of equity in asset(s)."

On the same day the IRS issued petitioners Letter 4837, the settlement officer emailed a bankruptcy specialist in the IRS Insolvency Division for clarification on which tax years were discharged in petitioners' bankruptcy case. On August 1, 2023, a bankruptcy specialist informed the settlement officer that tax years 2008 through 2015 were dischargeable, but the IRS may pursue collection from the exempt or abandoned assets excluded from the bankruptcy proceeding. The bankruptcy specialist further explained that tax years 2017 through 2019 were not dischargeable. During a followup email on September 8, 2023, the bankruptcy specialist advised the settlement officer that "[b]ecause this was a Chapter 7 No [sic] asset case when it was discharged on 3/8/21 and we had a [federal tax lien] filed before the bankruptcy, we are still allowed to collect on the exempt and abandoned property to payoff or on their dischargeable periods of [2008 through 2015]."

On August 31, 2023, the settlement officer held a teleconference with petitioners' representative, Ivan Nalbantov, to conduct the CDP hearing. The IRS did not receive any of the requested documents listed in Letter 4837 before the hearing. During the hearing Mr. Nalbantov disputed the IRS's authority to collect the 2008 through 2015 balances because petitioners included these unpaid tax liabilities in the bankruptcy filing. The settlement officer told Mr. Nalbantov that an IRS bankruptcy specialist was reviewing petitioners' case. During the CDP hearing Mr. Nalbantov denied knowledge of any exempt or abandoned property. The settlement officer and Mr. Nalbantov also discussed an installment agreement. Petitioners, through Mr. Nalbantov, orally offered $500 per month and would sign a "waiver" if the 2007 through 2015 balances were "discharged." The settlement officer advised Mr. Nalbantov that she did not have the authority to "discharge" any tax debts. Petitioners did not raise the alternatives of an offer-in-compromise or currently not collectible status during the hearing despite checking the boxes for these options on their Form 12153.

**[\*5]**    On September 21, 2023, the settlement officer followed up with her supervisor after the supervisor's meeting with the IRS bankruptcy specialist. The settlement officer learned that petitioners had exempt and/or abandoned property excluded from the bankruptcy and that petitioners failed to respond to a letter from an IRS bankruptcy specialist regarding their equity in the property. The supervisor informed the settlement officer that petitioners needed to submit Form 433–A as well as address the equity in the exempt and/or abandoned property before a "discharge" or streamlined installment agreement could be granted.

After the meeting with her supervisor, the settlement officer called Mr. Nalbantov. The settlement officer explained that petitioners had failed to respond to the IRS bankruptcy specialist's letter regarding the exempt and/or abandoned property and this lack of response was the reason why the "discharge" had not yet been completed. She further explained that because the assets were excluded from the bankruptcy, unpaid tax liabilities would not be "discharged" until the IRS completed its investigation into whether collection from those assets was warranted. Mr. Nalbantov maintained his position that he was unaware of any exempt or abandoned property and had not asked petitioners about it.

The settlement officer again informed Mr. Nalbantov that petitioners were required to submit a completed Form 433–A detailing the equity in their assets and evidence of their attempt to obtain a minimum of two loans (if denied) before an installment agreement could be granted. She requested that petitioners submit this documentation by October 12, 2023; otherwise, she would sustain the proposed levy action.

After speaking with the settlement officer, Mr. Nalbantov called the settlement officer's supervisor. Mr. Nalbantov told the supervisor that he understood the exempt property issue and the need for equity substantiation, but he disagreed that Form 433–A needed to be filed for an installment agreement. In Mr. Nalbantov's view the remaining balance, after accounting for the "discharge," qualified for a streamlined installment agreement.[5] The supervisor explained that Form 433–A

---

[5] A streamlined installment agreement is designed to reduce taxpayer burdens by eliminating the requirement to verify financial information or submit Form 433–A. Internal Revenue Manual 5.14.5.1.1 (Oct. 14, 2021). These agreements are limited to taxpayers with unpaid balances of assessments not exceeding $50,000. *See id.* 5.14.5.2(1) (Oct. 14, 2021).

**[*6]** would still be required for other collection alternatives that petitioners included on their Form 12153. Mr. Nalbantov insisted that other collection alternatives would not be necessary after the parties entered a streamlined installment agreement. The supervisor confirmed that petitioners needed to provide information to support their ability to reach the equity in the exempt and/or abandoned assets and that a determination would have to be made on the collectibility from that property before the IRS bankruptcy specialist concluded her involvement in the matter.

Neither petitioners nor Mr. Nalbantov submitted the requested information by the October 12, 2023, deadline.[6] On October 19, 2023, the settlement officer issued to petitioners a notice of determination sustaining the IRS's notice of intent to levy with respect to tax years 2008 through 2015, 2017 through 2019, and 2021. The settlement officer sustained the collection action because petitioners "requested an Installment Agreement, Offer in Compromise, and Currently Non-Collectible Status, but failed to provide the requested financial information, therefore no collection alternative [could] be granted."

Petitioners filed a petition in this Court seeking a review of the determination. They alleged that the settlement officer erred in her determination because the IRS bankruptcy specialist had not yet "finalized" the bankruptcy discharge. They asserted that the "surviving balance" of their tax debts could not "be ascertained" until the IRS accounted for and processed the bankruptcy discharge. Therefore, petitioners imply that sustaining the levy action was premature because there was "an unknown balance due." They stated that the "obligation to address the exempt property rests with [the IRS bankruptcy specialist]; not the taxpayer, who is under no obligation to assist them in doing so."

*Discussion*

I.    *Summary Judgment Standard*

Under Rule 121(a)(2), we may grant summary judgment when there is no genuine dispute as to any material fact and the moving party

---

[6] As it relates to the request of loan denials, petitioners contend that at some point they explained to the settlement officer that the banks advised petitioners not to apply for home equity loans because the bankruptcy was still too recent, and petitioners' credit score would likely disqualify them from the bank extending any line of credit. The record does not include any written documentation to verify this claim.

**[\*7]** is entitled to judgment as a matter of law. *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The burden is on the moving party to demonstrate that no genuine dispute as to any material fact remains and that it is entitled to judgment as a matter of law. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74–75 (2001). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520 (first citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and then citing *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985)). However, the nonmoving party may not rest upon the mere allegations or denials in its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *Sundstrand Corp.*, 98 T.C. at 520.

## II. *Standard of Review*

Section 6330(b) permits a taxpayer to challenge an IRS levy before the Appeals Office, and section 6330(d)(1) provides for Tax Court review of an Appeals Office determination. The Code does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case; rather, we are guided by our precedents.

Where the validity of a taxpayer's underlying liability is properly at issue, we review the IRS determination de novo. *See Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where a taxpayer's underlying liability is not properly at issue, we review the IRS determination for abuse of discretion only. *See id.* at 182. Petitioners did not challenge the underlying liabilities in the CDP hearing, so we review the IRS's determination for abuse of discretion only. *See, e.g.*, *Imarah v. Commissioner*, T.C. Memo. 2008-137, slip op. at 7 (finding that the taxpayers' contention that chapter 7 bankruptcy order discharged tax liability "raises an issue relevant to the appropriateness of the collection action, not [the taxpayers'] underlying tax liability").

## III. *Abuse of Discretion*

In determining whether the settlement officer abused her discretion in sustaining the collection actions, we consider whether she (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioners raised, and (3) considered "whether any proposed

**[\*8]** collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioners] that any collection action be no more intrusive than necessary." § 6330(c); *see* § 6320(c) (incorporating section 6330(c)). Our review of the record establishes that the settlement officer properly discharged all her responsibilities under these provisions.

In reviewing a determination under section 6330(c)(2), we consider only issues the taxpayer adequately raised during the hearing. *See LG Kendrick, LLC v. Commissioner*, 146 T.C. 17, 34 (2016), *aff'd*, 684 F. App'x 744 (10th Cir. 2017). A taxpayer does not properly raise the issue during the hearing if he "fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence." *See* Treas. Reg. §§ 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3; *see also LG Kendrick, LLC*, 146 T.C. at 34; *Shanley v. Commissioner*, T.C. Memo. 2009-17, 97 T.C.M. (CCH) 1062, 1065–66 (holding that a 14-day deadline to submit financial documents was reasonable given that the taxpayer had three months from his request for a CDP hearing to gather the information).

## A. *Liability for Tax Years 2008 Through 2015*

During the CDP hearing, petitioners contended that their federal tax debts for tax years 2008 through 2015 were discharged during the bankruptcy action. The IRS concluded that tax years 2008 through 2015 were dischargeable; but because a properly recorded lien existed on the property before the filing of the bankruptcy action, the IRS could pursue collection against any exempt or abandoned assets.

To evaluate whether collection against any exempt or abandoned property was warranted and what collection alternatives petitioners might have available to them, the IRS requested certain information from petitioners: (1) a completed Form 433–A and (2) two denials for loans showing that the equity in the assets could not be reached or borrowed against. Petitioners did not supply the requested information despite numerous requests to do so. Petitioners argue that it is not a taxpayer's obligation to assist the IRS in addressing the exempt property. Petitioners are mistaken. We have consistently held that it is not an abuse of discretion for a settlement officer to reject collection alternatives and sustain collection actions where the taxpayer failed, after being given sufficient opportunities, to supply the required forms and supporting financial information. *See McMurtry v. Commissioner*, T.C. Memo. 2019-22, at \*7; *see also Huntress v. Commissioner*, T.C.

**[\*9]** Memo. 2009-161; *Prater v. Commissioner*, T.C. Memo. 2007-241; *Roman v. Commissioner*, T.C. Memo. 2004-20. Addressing the exempt property was a prerequisite to the IRS's determining what collection actions and alternatives could be used. Thus, the settlement officer was within her discretion to sustain the levy action. Even if the underlying tax claims for 2008 through 2015 had been discharged personally, the exempt property remained subject to the lien; and without compliance from petitioners, the IRS was unable to determine whether collection against the assets was possible.

If the settlement officer made the determination on the basis of an erroneous view of the law and petitioners' liability was "discharged in bankruptcy, then we must reject respondent's views and find that there was an abuse of discretion." *See Swanson v. Commissioner*, 121 T.C. 111, 119 (2003). Our review of the record establishes that the settlement officer properly applied bankruptcy law and did not abuse her discretion by sustaining the levy.

The IRS properly filed NFTLs for tax years 2008 through 2015 before petitioners filed for bankruptcy. The IRS is well within its right to enforce its lien. A chapter 7 bankruptcy may discharge a person from personal liability for the federal taxes owed in some cases, discussed *infra*; however, it does not extinguish a pre-petition federal tax lien. *Iannone v. Commissioner*, 122 T.C. 287, 293 (2004); *see also* 11 U.S.C. § 522(c)(2)(B) (providing that exempt property remains subject to properly filed tax liens even though the underlying tax claim may have been discharged); 11 U.S.C. § 523 (codifying various exceptions to discharge under 11 U.S.C. § 727 including tax debts).

Pre-petition claims are characterized as either secured or unsecured. *See* 11 U.S.C. § 506. Unsecured claims are further categorized into priority claims and general unsecured claims. *See* 11 U.S.C. § 507. For a creditor to be entitled to a secured claim, the claim must be secured by a lien on property in which the bankrupt estate has an interest. *See* 11 U.S.C. § 506(a). Unsecured claims include those claims which are not secured by a lien on the bankrupt estate's property, as well as secured claims to the extent that the amount of the claim secured by a lien exceeds the value of the encumbered property. *See id.* Under 11 U.S.C. § 506(a), the IRS has a secured claim when it has properly filed a pre-petition NFTL and there is equity in the debtor's property to which the lien attaches.

**[\*10]** The bankruptcy court's discharge order states that "no one may make any attempt to collect a discharged debt from the debtors personally." It further explains that "a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated." Here, respondent had a pre-petition lien for tax years 2008 through 2015. Thus, under the discharge order, respondent may not collect from petitioners personally (in personam) for these years but may enforce the claim against petitioners' exempt property (in rem) because a lien was filed before petitioners' bankruptcy action.

We next consider whether the settlement officer properly applied the law in determining that the unsecured priority claims for tax years 2017 through 2019 survived in personam. Priority claims consist of unsecured claims of the type listed in 11 U.S.C. § 507 and typically give unsecured IRS tax claims eighth priority. *See* 11 U.S.C. § 507(a)(8). Title 11 U.S.C. § 507(a)(8) includes claims for income tax for a taxable year ending on or before the date of the filing of the bankruptcy petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition. In other words, if the IRS has a claim for tax on a return that was due within three years before the bankruptcy petition was filed, the claim is not dischargeable in a chapter 7 bankruptcy case.

Petitioners filed their bankruptcy petition on December 8, 2020. Therefore, under 11 U.S.C. § 523, unsecured tax debts incurred for tax years 2017 through 2019, i.e., within three years before December 8, 2020, are excepted from personal discharge, and respondent may collect such debts against petitioners in personam.

In sum, the settlement officer correctly determined that the 2008 through 2015 tax liabilities could be collected against petitioners' exempt property despite liabilities that may have been discharged personally. She determined that petitioners needed to show the IRS their inability to reach equity in the assets before the IRS bankruptcy specialist could conclude her review of the case. Having correctly applied bankruptcy law, the settlement officer did not abuse her discretion in sustaining the proposed levy action.

### B.    *Collection Alternative—Installment Agreement*

In their Form 12153 petitioners requested consideration of an installment agreement, an offer-in-compromise, and currently not

**[\*11]** collectible status as collection alternatives. Petitioners, through Mr. Nalbantov, orally proposed an installment agreement during the CDP hearing but did not raise the alternatives of an offer-in-compromise or currently not collectible status despite checking the boxes for these options on their Form 12153. Thus, because neither an offer-in-compromise nor currently not collectible status was properly raised at the CDP hearing, we need not review them. *See Giamelli v. Commissioner*, 129 T.C. 107, 115 (2007); *see also Palli v. Commissioner*, T.C. Memo. 2025-54, at \*16. We need consider only whether the settlement officer abused her discretion in denying petitioners' installment agreement proposal.

A settlement officer does not abuse her discretion regarding a taxpayer's proposed installment agreement if the taxpayer did not submit a written proposal for such an agreement. *See Pough v. Commissioner*, 135 T.C. 344, 351 (2010). Although petitioners offered to pay $500 per month and to sign a "waiver" if their 2007 through 2015 balances were "discharged," they never solidified this offer in writing.[7] Given that petitioners did not submit a written proposal for such an agreement, the settlement officer did not abuse her discretion.

Furthermore, petitioners failed to submit Form 433–A and address the equity in their exempt property. The settlement officer could properly reject petitioners' installment agreement offer because they failed to submit Form 433–A supported by relevant financial information. *See Coleman v. Commissioner*, T.C. Memo. 2010-51, slip op. at 10, *aff'd*, 420 F. App'x 663 (8th Cir. 2011). The IRS bankruptcy specialist, through the settlement officer, requested information regarding the exempt property to determine whether the IRS could collect from the exempt or abandoned assets, but petitioners never replied to the inquiries or supplied the requested information. Mr. Nalbantov continued to maintain that Form 433–A was not required because the balance qualified for a streamlined installment agreement. However, to get to a point where the remaining balance could be determined, the IRS bankruptcy specialist required that petitioners submit two loan request denials and address their inability to reach the equity in their assets. Petitioners did not comply with these requests and, as a result, failed to show an inability to access the equity in any exempt or abandoned property.

---

[7] The 2007 balance was no longer at issue because the period of limitations on collection expired. The years at issue included 2008 through 2015.

**[\*12]**  Accordingly, we hold that the settlement officer did not abuse her discretion in issuing the notice of determination sustaining the proposed collection action.  We will therefore grant respondent's motion for summary judgment.

To reflect the foregoing,

*An appropriate order and decision will be entered.*