# United States Tax Court

T.C. Memo. 2025-58

KENT TREMBLY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 1567-23L.                    Filed June 5, 2025.

————

Kent Trembly, pro se.

*Christina L. Holland* and *Joline M. Wang*, for respondent.

## MEMORANDUM OPINION

JENKINS, *Judge*: In this collection due process (CDP) case, petitioner, Kent Trembly, timely filed a Petition challenging a Notice of Determination Concerning Collection Actions Under IRS Sections 6320 or 6330 of the Internal Revenue Code (Initial NOD) issued by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals). Petitioner resided in Nebraska when the Petition, which advances frivolous arguments, was filed. The Initial NOD sustains a proposed levy aimed at collecting unpaid assessments related to petitioner's 2006 and 2007 tax years. The Initial NOD was followed by a supplemental Notice of Determination Concerning Collection Actions Under IRS Sections 6320 or 6330 of the Internal Revenue Code (Supplemental NOD), also sustaining the proposed levy.

**[\*2]** Respondent filed a Motion for Summary Judgment (MSJ) pursuant to Rule 121,[1] contending that it was not an abuse of discretion for Appeals to sustain the proposed levy. Petitioner filed an objection to the MSJ (Objection), taking frivolous positions similar to those advanced in the Petition. This Court finds that this case is appropriate for summary adjudication and that Appeals did not abuse its discretion in issuing the Supplemental NOD. This Court will thus grant the MSJ.

## *Background*

The following facts are based on the parties' pleadings, the MSJ and Objection papers, and the administrative record, including the Exhibits attached thereto. *See* Rule 93. The facts are stated solely for the purpose of ruling on the MSJ and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

I.  *Tax Year 2006 and 2007 Criminal Restitution Liabilities*

On March 20, 2014, petitioner was indicted in a criminal case on two counts of filing false tax returns for his 2006 and 2007 tax years and one count of impeding enforcement of the internal revenue laws. Petitioner pleaded guilty to one count of filing a false tax return for his 2006 tax year and was sentenced to probation for two years and ordered to pay criminal restitution of $110,375 plus a special assessment of $100.

On December 9, 2016, judgment was entered in the criminal case reflecting that petitioner made a payment of $110,000. On April 3, 2017, petitioner made an additional payment to satisfy the balance of the restitution judgment. The IRS created two separate accounts for petitioner (separate assessment accounts), one for the 2006 tax year and the other for the 2007 tax year. On May 17, 2017, the IRS made restitution-based assessments (RBAs) for the 2006 and 2007 tax years to petitioner's separate assessment accounts. Petitioner's earlier payments were applied against the RBAs and then credited to his federal income tax accounts for the 2006 and 2007 tax years. *See United States v. Tucker*, 217 F.3d 960, 962 (8th Cir. 2000) (indicating that

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

**[\*3]** criminal restitution payments are to be applied against civil tax judgments related to the same tax deficiency).

Also on May 17, 2017, the IRS assessed interest related to the RBAs, recording it on the separate assessment accounts. In the summer of 2017, the IRS filed a lien (RBA interest lien) with respect to the interest assessments and issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. On October 29, 2018, the IRS abated the interest assessments on petitioner's separate assessment accounts on the basis of the Court's holding in *Klein v. Commissioner*, 149 T.C. 341, 361 (2017), that a restitution obligation does not constitute a civil tax liability on which interest can be imposed. However, the RBA interest lien was not released at that time.

II.     *Tax Year 2006 and 2007 Civil Fraud Penalties*

Petitioner's federal income tax returns for 2005, 2006, 2007, and 2008 were also subject to a civil examination by the IRS.[2] On May 17, 2018, the IRS issued a Notice of Deficiency to petitioner and his spouse, determining income tax deficiencies of $612,942 and $232,390 for the 2006 and 2007 tax years, respectively, as well as an addition to tax under section 6651(a)(1) of $152,978 for the 2006 tax year. The Notice of Deficiency also reflected civil fraud penalties under section 6663 of $459,699 for 2006 and $174,292 for 2007. Petitioner did not dispute the Notice of Deficiency by filing a timely petition with this Court. Therefore, the IRS assessed the proposed deficiencies, additions to tax, and related interest to address the joint liabilities of petitioner and his spouse.[3] The IRS also assessed the civil fraud penalties against

---

[2] In 2014, the IRS determined income tax deficiencies and civil fraud penalties against petitioner for the 2005 and 2008 tax years. Petitioner filed petitions with the Court for redetermination of the deficiencies determined for those years but failed to pay the required filing fees; therefore, both cases were dismissed for lack of jurisdiction. In 2017, petitioner and his spouse filed petitions with the Court challenging Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 issued by the IRS in connection with their federal income tax liability for their 2008 tax year. The Court granted respondent's Motions for Summary Judgment. Accordingly, the only years at issue in this case are the 2006 and 2007 tax years.

[3] In November 2018, the IRS filed liens in connection with the liabilities for the 2006 and 2007 tax years assessed against petitioner and his spouse (joint assessments) and issued a Notice of Lien Filing and Right to Collection Due Process Hearing. The IRS also issued a notice of intent to levy in connection with those amounts in August 2021. Petitioner and his spouse did not request CDP hearings in connection with the joint assessments.

**[\*4]** petitioner only, on the separate assessment accounts created by the IRS earlier to address the RBAs, which had been paid in full by the time of the civil penalty assessments. Respondent did not file a lien with respect to the civil fraud penalty assessments.

III.   *Notice and Request for CDP Hearing*

On February 7, 2022, the IRS sent petitioner a Letter 1058, Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (Final Notice), notifying petitioner of a proposed levy related to the 2006 and 2007 tax years. The Final Notice issued to petitioner identified the "[u]npaid amounts from prior notices" as $459,739 for the 2006 tax year and $174,292 for the 2007 tax year, approximately the same amounts as the civil fraud penalties listed in the Notice of Deficiency issued to petitioner on May 17, 2018.[4] However, the Final Notice mislabeled the amounts as RBAs instead of civil fraud penalties.

In response to the Final Notice, petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, dated March 8, 2022. The Form 12153 indicates that the tax implicated is "Income Tax" on the Forms 1040A, U.S. Individual Income Tax Return, for the 2006 and 2007 tax years. Petitioner indicated on Form 12153 that the basis for the CDP hearing request was the receipt of both a lien notice and a levy notice and also checked the box for an equivalent hearing. Petitioner also checked the collection alternative box for "I cannot pay balance." The Form 12153 did not indicate a dispute with the underlying tax liabilities. It was signed by both petitioner and his spouse.

IV.   *Initial CDP Hearing*

Petitioner's request for a CDP hearing was assigned to an Appeals Officer (First AO), who verified that he had no prior involvement with petitioner for the types of taxes and the tax years involved in the case and conducted his initial analysis of the case. The First AO indicated that as part of his analysis he had verified the validity of the liabilities. However, instead of verifying the validity of the civil fraud penalties, the First AO verified the validity of the RBAs.

---

[4] The Final Notice reflects $40 more for the 2006 tax year than the Notice of Deficiency, which is consistent with the amount reflected on petitioner's account transcript as a fee added to his account on July 31, 2017. On the basis of the timing, the additional $40 appears to be a fee relating to the RBA interest lien.

**[\*5]** On June 30, 2022, the First AO sent petitioner a letter acknowledging receipt of the CDP hearing request and scheduling a telephone conference CDP hearing for August 17, 2022. The letter also explained that in order for the First AO to consider alternative collection methods, petitioner was required to provide within 14 days (1) a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, (2) proof of payment for estimated taxes, and (3) financial information, including bank statements and current loan statements for secured loans. Petitioner was also required to provide within 21 days a signed Form 1040, U.S. Individual Income Tax Return, for the 2020 tax year. On July 14, 2022, in response to petitioner's request, petitioner and the First AO agreed to reschedule the CDP hearing for September 21, 2022. On September 19, 2022, petitioner submitted to the First AO a copy of the 2020 Form 1040, including proof of timely filing. Petitioner did not submit any additional information requested by the First AO.

Petitioner did not participate in the CDP hearing with the First AO on the scheduled date. The First AO sent another letter, dated September 22, 2022, requesting a call within 14 days. The letter also requested that petitioner provide the outstanding Form 433–A and related financial information required to have an alternative collection method considered. The letter further alerted petitioner that if the Form 433–A and financial information were not provided, a determination would be made on the basis of the administrative file. On or around October 3, 2022, at petitioner's request, the First AO agreed to extend the due date to October 21, 2022. On October 26, 2022, at petitioner's request, the First AO agreed to extend the due date further, to November 2, 2022. On November 28, 2022, having received no response from petitioner, the First AO determined that he would sustain the proposed levy. The Initial NOD was issued on November 30, 2022.

V.    *Initial NOD*

The Initial NOD reflects the determination to sustain the proposed levy against petitioner. It explains that because petitioner did not provide a Form 433–A for Appeals to consider, Appeals "could not consider if the proposal to issue levies was overly intrusive against the IRS' desire to ensure that the taxes are collected efficiently and effectively."

The attachment to the Initial NOD mislabels the amounts due as RBAs. It also explains:

[*6]     The balance dues in this case were the result of Restitution Based Assessments (RBA) assessed on 5/15/2017 for the tax years 2006 and 2007. Additional fraud penalties were assessed on 10/15/2018 for both periods which is why a second Letter 1058 Notice of Intent to Levy was issued with Collection Due Process (CDP) rights on both modules. That second notice was issued by IRS compliance on 2/7/2022 offering you the right to a CDP hearing, which you exercised by filing a timely Form 12153 requesting a CDP hearing on 3/8/2022.

It further explains the background of this case, including the fact that a Letter 3172 notifying petitioner and his spouse of the filing of a Notice of Federal Tax Lien was issued in 2017. It explains that because an equivalent hearing must be requested within one year of when the Letter 3172 was issued, the First AO was able to consider his 2022 CDP hearing request only with respect to the 2022 levy notice.

The attachment also explains that petitioner did not raise a challenge to his underlying liabilities and that Appeals cannot verify petitioner's claim that he cannot pay his liabilities because petitioner failed to provide the required financial information needed to consider the claim. It further explains that petitioner's request for "not collectable status does not balance with the government's interest that the taxes be collected as effectively and efficiently as possible because due to a lack of financial information Appeals cannot determine if the level of intrusiveness reaches the level that justifies a not collectable recommendation." Accordingly, it explains, Appeals sustains the proposed levy.

VI.     *Petition and Remand*

In the Petition, petitioner does not dispute the underlying liabilities. However, acknowledging that this Court may find his arguments frivolous, he advances arguments about the IRS not being an agency of the U.S. government. He also states: "After we received [the First AO's Initial NOD] . . . [the First AO] NEVER answered his phone and I left him one or two voice mail messages. I believe he steadfastly refused to answer my calls . . . ."

On June 26, 2023, respondent filed a Motion to Remand. In it, respondent stated that the Final Notice incorrectly describes the civil fraud penalty assessments as RBAs, indicating that this was

[*7] presumably because the separate assessment accounts on which the civil fraud penalty assessments were made were originally created for the RBAs. Respondent further stated that when the First AO verified the assessments, he did not address whether the Notice of Deficiency was sent to petitioner by certified mail to his last known address because the First AO "also did not catch that the liabilities at issue were not restitution-based assessments, but rather civil fraud penalty assessments that resulted from a defaulted Notice of Deficiency." Accordingly, respondent requested that the Court remand the case to Appeals "for a supplemental CDP hearing for the limited purpose of verifying petitioner's civil fraud penalty assessments and supplementing the administrative record as needed." In addition, respondent stated that although petitioner's CDP hearing request was not timely as to the RBA interest lien filed during the summer of 2017, remand would present an opportunity for Appeals to confirm or effect proper release or withdrawal of the RBA interest lien.

On July 26, 2023, petitioner mailed an Objection to respondent's Motion to Remand, stating that he did not object to respondent's Motion to Remand as long as respondent satisfied certain demands, including allowing 60 to 90 days for petitioner to retain a tax lawyer. The Court granted respondent's Motion to Remand on October 31, 2023, ordering that the supplemental CDP hearing occur no later than March 29, 2024.

In a memorandum to Appeals, respondent's counsel explained the history of the case and the circumstances leading to the mislabeling of the assessments in the Initial NOD. Respondent's counsel instructed Appeals to verify the validity of the assessments by ensuring that the Notice of Deficiency was sent to petitioner's last known address by certified mail and verifying that the section 6751 supervisory approval requirement was met with respect to the civil fraud penalties. Respondent's counsel also instructed Appeals to allow petitioner another opportunity to provide the information needed to consider collection alternatives with respect to the civil fraud penalties and to confirm that the RBA interest lien was properly released or withdrawn. The case was assigned to a new Appeals Officer (Second AO).

VII.    *Supplemental CDP Hearing*

After being assigned the case, the Second AO confirmed that she had no prior involvement with petitioner for the types of taxes and the tax years at issue. On November 28, 2023, the Second AO sent petitioner a letter scheduling a telephone conference CDP hearing for January 3,

**[\*8]** 2024. The letter explained that in order to consider the issues raised in the CDP hearing request, petitioner was required to provide within 14 days a completed Form 433–A and a specified list of financial information.

Meanwhile, to confirm that the Notice of Deficiency was sent to petitioner, the Second AO obtained a copy of the Notice of Deficiency determining the civil fraud penalties against petitioner, along with proof of mailing showing that the Notice of Deficiency was sent to petitioner's last known address by certified mail on May 17, 2018, and delivered on May 22, 2018. The Second AO verified that the civil fraud penalty assessments were made after petitioner failed to file a timely petition in response to the Notice of Deficiency. The Second AO also verified that the supervisory approval requirements were met with respect to the civil fraud penalties by obtaining a copy of the Civil Penalty Approval Form, approved and signed by the examining Revenue Agent's Group Manager (Group Manager), i.e., direct supervisor, on December 13, 2017, and a copy of the "30-day letter,"[5] also approved and signed by the Group Manager, and sent to petitioner on or after December 13, 2017.

On December 18, 2023, the Second AO received a letter from petitioner, which petitioner also filed with the Court, seeking approximately "60 more days" to hire a tax attorney, 60 to 150 additional days to secure funds to "pay off [the] IRS debts," 30 to 60 days to complete the Form 433–A and secure the related financial information, 45 to 60 additional days before the initial conference with the Second AO, and generally, "30 to 60 days or more" to work with the IRS. The Second AO determined that because petitioner had, in his July 2023 Objection to respondent's Motion to Remand, made a request for 60 to 90 days to obtain an attorney, and petitioner was now making the same request even though more than 90 days had elapsed since then, she was not willing to allow petitioner to further delay the case.

Petitioner did not participate in the supplemental CDP hearing with the Second AO on the scheduled date, nor did he submit any additional information requested by the Second AO. The Second AO sent

---

[5] A 30-day letter notifies a taxpayer that a revenue agent has completed work, comes with a revenue agent report explaining the adjustments proposed, and gives the taxpayer the opportunity to protest the adjustments before Appeals. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 8 (2020) (reviewing the analysis of 30-day letters in *Clay v. Commissioner*, 152 T.C. 223, 249 (2019), *aff'd*, 990 F.3d 1296 (11th Cir. 2021), and analogizing 60-day letters); Statement of Procedural Rules, 26 C.F.R. § 601.105(d)(1).

[*9] another letter, dated January 3, 2024, requesting that petitioner call her and provide the Form 433–A and financial information previously requested within 14 days, by January 17, 2024. The letter explained why the Second AO did not allow petitioner an additional 60 to 90 days to obtain an attorney. The letter also indicated that Appeals would "promptly send you a Collection Due Process supplemental notice of determination with our findings."

The Second AO's notes indicate that on January 17, 2024, petitioner requested an accounting of his entire outstanding IRS balance so that he could "honor it immediately." In response, the Second AO sent petitioner a letter dated January 18, 2024, providing payment instructions and showing a total outstanding balance for tax years 2005 through 2008, calculated through January 31, 2024, of $3,461,870, and reiterating that petitioner could provide the financial information previously requested for consideration of collection alternatives if he could not pay in full. On February 2, 2024, having received no response from petitioner, the Second AO determined that she would sustain the proposed levy. The Supplemental NOD was issued on February 8, 2024.

VIII.  *Supplemental NOD*

The Supplemental NOD explains that it is in addition to the Initial NOD. It further explains that "[a]ll legal and procedural requirements were followed regarding the issuance of the Final Notice – Notice of Intent to Levy." The attachment to the Supplemental NOD notes that although the RBA interest lien was not at issue in the CDP proceeding, it was released on December 27, 2023. It also indicates that the liabilities at issue are the civil fraud penalties for the 2006 and 2007 tax years and provides the background of their assessment. It describes the mailing of the Notice of Deficiency to petitioner's last known address. It also notes that a "review of the Examination file reflects the Revenue Agent secured managerial approval to pursue" the penalties. The attachment further explains that the Second AO verified that the requirements of any applicable law or administrative procedure were met, that petitioner did not dispute the liabilities at issue, and that petitioner's request for collection alternatives was denied because petitioner did not participate in the CDP hearing and did not provide the requested financial information. The attachment states that, as of February 6, 2024, petitioner was not in filing compliance and he owed the IRS $3,472,214 for all liabilities. Finally, the attachment concludes:

**[\*10]** In general, the [IRS]'s proposed levy action will be sustained when you do not appear for your requested hearing, you do not submit the requested financial information or you do not substantiate that the assessment is incorrect. You did not demonstrate that the issuance of the Final Notice – Notice of Intent to Levy was overly intrusive or that better alternatives are available.

Enforcement action is a necessary component of a voluntary tax system. Although intrusive, the [Second AO] has determined that the [IRS]'s issuance of the Final Notice – Notice of Intent to Levy and proposed levy action was an appropriate action at the time it was issued. Since you did not provide an amended tax return to dispute your self-filed tax liability and no financial information was provided for consideration of a collection alternative to the proposed levy action, the [IRS] is justified in proceeding with the proposed levy action as it appears to be no more intrusive than necessary for the efficient collection of the unpaid tax.

*Discussion*

I.    *Summary Judgment Standard*

In the U.S. Court of Appeals for the Eighth Circuit, to which an appeal of this case would presumptively lie, *see* § 7482(b)(1)(G), review of CDP determinations for abuse of discretion is based on the administrative record, *see Robinette v. Commissioner*, 439 F.3d 455, 461–62 (8th Cir. 2006), *rev'g* 123 T.C. 85 (2004). In cases in which judicial review is based solely on the administrative record, a motion for summary judgment and any response in opposition to a motion for summary judgment must include a statement of facts with references to the administrative record. Rule 121(j). In deciding whether to grant summary judgment, the Court considers factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *Sundstrand Corp.*, 98 T.C. at 520; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**[\*11]** In the MSJ, respondent argues that there was no abuse of discretion because Appeals fully complied with the requirements of section 6330(c)(3). Accordingly, respondent argues, summary adjudication is appropriate.

Petitioner has not argued that the administrative record is incomplete or should be supplemented, nor has he filed a motion to complete or supplement the administrative record pursuant to Rule 93(b). Instead, petitioner, in his Objection, states that he is not a "tax protester," yet he rehashes the argument in his Petition challenging the IRS's status as a government agency and raises new, equally frivolous, "tax protester" type arguments, including that taxes are voluntary and that the Sixteenth Amendment was not properly ratified, as well as a theory concerning "STRAWMAN accounts."[6]

This Court finds, on the basis of the record before it, that this case is appropriate for summary adjudication.

II.    *Standard for Review*

If the underlying tax liability is not at issue, the Court reviews Appeals' determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). In reviewing for abuse of discretion, the Court does not conduct an independent review of the collection alternatives and does not substitute its judgment for that of Appeals; rather, the Court's review is limited to determining whether the settlement officer's decision was arbitrary, capricious, or without sound basis in fact or law. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). If the underlying tax liability was properly at issue in the CDP hearing, the Court reviews the determination de novo. *Lunsford v. Commissioner*, 117 T.C. 183, 185 (2001) (citing *Goza*, 114 T.C. at 181–82).

In a CDP hearing, a taxpayer may raise challenges to the existence or amount of an underlying liability only if the taxpayer did not receive a statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. *See*

---

[6] Petitioner, in his Objection, also states that "[p]etitioner moves, for summary adjudication in petitioner's favor." Petitioner's Objection does not assert facts supporting summary judgment, does not reference the administrative record, and does not otherwise satisfy the requirements of Rule 121; therefore, this Court will not treat the Objection as a motion for summary judgment.

[*12] § 6330(c)(2)(B); Treas. Reg. § 301.6330-1(e)(1). The term "underlying liability" includes any tax deficiency, additions to tax or penalties, and statutory interest. *See Montgomery v. Commissioner*, 122 T.C. 1, 7–8 (2004); *Katz v. Commissioner*, 115 T.C. 329, 338–39 (2000). Petitioner received a statutory notice of deficiency for the civil fraud penalties that the proposed levy at issue in this case seeks to collect and does not challenge his underlying liability. Accordingly, this Court reviews Appeals' determination for abuse of discretion. *Sego*, 114 T.C. at 610; *Goza*, 114 T.C. at 181–82.

In conducting this review, this Court looks to the reasons offered in the Supplemental NOD. *See Kelby v. Commissioner*, 130 T.C. 79, 86 (2008) ("A corollary to the fact that a taxpayer is entitled to one hearing is that the Commissioner's Appeals Office makes a single determination, which may or may not be supplemented. When a case is remanded to Appeals and supplemental determinations are issued, the position of the Commissioner that we review is the position taken in the last supplemental determination."); *see also Hoyle v. Commissioner*, 136 T.C. 463, 467–68 (2011) (holding similarly for CDP hearings under § 6320), *supplementing* 131 T.C. 197 (2008). "[W]e look to the reasons offered in the notice of determination, as further unspooled in the settlement officer's contemporaneous rejection memorandum and case activity notes." *Serna v. Commissioner*, T.C. Memo. 2022-66, at *8; *see also Melasky v. Commissioner*, 151 T.C. 93, 106 (2018) ("[W]e will uphold a notice of determination of less than ideal clarity if the basis for the determination may reasonably be discerned . . . ."), *aff'd*, 803 F. App'x 732 (5th Cir. 2020); *Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018) ("Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any 'contemporaneous explanation of the agency decision' contained in the record." (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 738 (D.C. Cir. 2001))); *Antioco v. Commissioner*, T.C. Memo. 2013-35, at *25 ("Applying *Chenery* in the CDP context means that we can't uphold a notice of determination on grounds other than those actually relied upon by the Appeals officer." (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943))).

III.     *Evaluation of Appeals' Determination*

This Court considers whether Appeals (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues petitioner raised; and (3) considered whether the proposed collection action balances the need

**[\*13]** for the efficient collection of taxes with the legitimate concern of petitioner that any collection action be no more intrusive than necessary. *See* § 6330(c).

###### A. *Verification*

The Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle*, 131 T.C. at 202–03. Generally, as part of the verification, Appeals must verify that the IRS properly obtained supervisory approval of the penalties if required by section 6751(b)(1). *See ATL & Sons Holdings, Inc. v. Commissioner*, 152 T.C. 138, 144 (2019). In cases in which there is supporting documentation in the administrative record, Appeals' verification has been accepted as adequate. *See Blackburn v. Commissioner*, 150 T.C. 218, 222 (2018).

The Second AO obtained proof that the Notice of Deficiency related to the civil fraud penalties was sent to petitioner's last known address, the same address that petitioner uses for filings with the Court. The Second AO also verified that the civil fraud penalty assessments were made after petitioner failed to file a timely petition in response to the Notice of Deficiency, and she obtained a copy of the Civil Penalty Approval Form, approved and signed by the Group Manager before issuance to petitioner of the 30-day letter, which was also approved and signed by the Group Manager.[7] Petitioner did not challenge verification in the Petition and has not otherwise set forth specific facts as to verification. *See* Rules 121(d), 331(b)(4). In any event, this Court concludes, from a review of the record, that Appeals conducted a thorough review of the record and verified that all applicable

---

[7] The Tax Court has interpreted section 6751(b) to require supervisory approval before a taxpayer is formally notified in writing that a revenue agent has completed work and made an unequivocal decision to assert penalties. *See Belair Woods, LLC*, 154 T.C. at 15. Several circuits apply a different test for determining whether section 6751(b) has been satisfied. *See Minemyer v. Commissioner*, Nos. 21-9006, et al., 2023 WL 314832, at \*5 (10th Cir. Jan. 19, 2023), *aff'g in part, rev'g in part and remanding* T.C. Memo. 2020-99; *Kroner v. Commissioner*, 48 F.4th 1272, 1276–81 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73; *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1071–74 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020). The Eighth Circuit has not squarely addressed the test for determining compliance with section 6751(b), but the Second AO's determination was correct under any standard thus far articulated by the courts.

**[*14]** requirements were met.[8] Accordingly, this Court concludes that there was no abuse of discretion with regard to the verification requirement.

### B.   *Issues Petitioner Raised*

A taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," at a CDP hearing, including challenges to the appropriateness of collection actions and requests for collection alternatives. *See* § 6330(c)(2)(A). As discussed *infra* Discussion Part III.B.3, most of petitioner's Petition and Objection are dedicated to frivolous arguments. However, petitioner did mention in his Petition leaving voicemails for the First AO and in his Objection that the IRS had not responded to his arguments (albeit frivolous ones). Accordingly, this Court considers issues related to the determination that petitioner was not entitled to a collection alternative and to Appeals' responsiveness to petitioner.

### 1.   *Lien Notice*

Petitioner indicated on his Form 12153 that the basis for the CDP hearing request was the receipt of both a lien notice and a levy notice related to the 2006 and 2007 tax years. Although the IRS did not file a lien in connection with the 2006 and 2007 tax year civil fraud penalties, the IRS did file the RBA interest lien, which related to the 2006 and 2007 tax years. The RBA interest lien was released as part of the supplemental CDP hearing. Accordingly, the Second AO did not abuse her discretion with respect to that lien. The IRS also filed a lien with respect to the joint assessments that related to the 2006 and 2007 tax years. Petitioner and his spouse did not request a CDP hearing in connection with that lien, and petitioner's Form 12153 would not have been timely to request a CDP hearing with respect to it. Furthermore, as noted in the Initial NOD, petitioner was not entitled to an equivalent hearing with respect to the lien related to the joint assessments because

---

[8] As noted *supra* note 4, the Final Notice did, in addition to mischaracterizing the civil fraud penalty assessments for the 2006 and 2007 tax years, include in the amount for the 2006 tax year an additional $40 that appears to be a fee related to the RBA interest lien. Although the Second AO does not appear to have noticed this discrepancy in amounts, that does not undermine the conclusion that she verified that the requirements of any applicable law or administrative procedure were satisfied. The Supplemental NOD identifies the civil fraud penalties, not the amounts identified in the Final Notice, as the items at issue. Accordingly, this Court understands Appeals to have sustained the levy to collect the civil fraud penalties for the 2006 and 2007 tax years.

**[\*15]** his request was made more than a year after the lien notice.[9] Accordingly, the Second AO did not abuse her discretion with respect to that lien.

## 2.    *Appeals' Responsiveness*

The First AO did not abuse his discretion by not speaking to petitioner after the case was closed and the Initial NOD was issued, particularly given that petitioner did not provide the financial information that the First AO requested. The Court has found that when Appeals provides a taxpayer a reasonable deadline to provide information, the taxpayer is expected to meet that deadline, and it is not an abuse of discretion for Appeals to reject collection alternatives and sustain the proposed collection action if the taxpayer fails to meet that deadline. *See Pough v. Commissioner*, 135 T.C. 344, 351 (2010); *Scanlon v. Commissioner*, T.C. Memo. 2018-51, at \*24 (collecting cases); Treas. Reg. § 301.6330-1(e)(1) ("Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing."). Accordingly, the Second AO did not abuse her discretion by maintaining reasonable deadlines in the face of petitioner's requests for extensions.

Despite being offered multiple opportunities to participate in a CDP hearing and multiple extensions of time to provide the required Form 433–A and related financial information needed for Appeals to consider collective alternatives, petitioner did not participate in a CDP hearing or provide the documentation requested by the First AO or the Second AO. Even after petitioner informed the Second AO that he would pay all liabilities in full, the Second AO provided petitioner another opportunity to provide financial information to seek a collection alternative. Accordingly, it was not an abuse of discretion for the Second AO to reject petitioner's request for collection alternatives because of his

---

[9] Requests for CDP hearings are required to be made within 30 days after a lien notice. § 6320(a)(3)(B). A taxpayer may request an equivalent hearing within the one-year period beginning the day after the end of the five-business-day period following the filing of a notice of federal tax lien. Treas. Reg. § 301.6320-1(i)(2), Q&A-I7. The 30-day deadline for the taxpayer to request a CDP hearing after receiving a lien notice may be equitably tolled in appropriate circumstances. *Organic Cannabis Found., LLC v. Commissioner*, 161 T.C. 13, 45 (2023). However, the record does not reflect any arguments at any point by petitioner relevant to equitable tolling.

**[\*16]** failure to provide the requested information to Appeals. *See Pough*, 135 T.C. at 351.

### 3. *Frivolous Arguments*

Although petitioner states that he is not a tax protester, he offers myriad tax protester type arguments in his Petition and his Objection. Courts generally do not address frivolous arguments with "somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." *Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984). The IRS has identified petitioner's assertions regarding the IRS's status as a government agency, the Sixteenth Amendment, and voluntary compliance, as well as his theory concerning "STRAWMAN accounts," as "frivolous positions" in I.R.S. Notice 2010-33, section III, 2010-17 I.R.B. 609, 609. Particularly because these arguments go to petitioner's underlying liability, which he has not disputed and cannot dispute, *see supra* Discussion Part II, this Court need not address these "tax protester" type arguments in detail, *see Wnuck v. Commissioner*, 136 T.C. 498 (2011).

### C. *Balancing Analysis*

Petitioner does not allege that Appeals failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *See* § 6330(c)(3)(C). He thus has conceded this issue. *See* Rules 121(d), 331(b)(4); *see also Ansley v. Commissioner*, T.C. Memo. 2019-46, at \*19. In any event, Appeals concluded in the Supplemental NOD that petitioner did not demonstrate that the proposed levy was overly intrusive or that better alternatives are available and that the IRS was justified in proceeding with the proposed levy because it appeared to be no more intrusive than necessary for the efficient collection of petitioner's unpaid tax. The Second AO observed in her balancing analysis that petitioner was not in filing compliance and owed the IRS $3,472,214 for all outstanding liabilities. This Court concludes that there was no abuse of discretion in the Second AO's determination.

### *Conclusion*

Finding no abuse of discretion, this Court will grant the MSJ and sustain Appeals' determination related to the levy to collect petitioner's unpaid liabilities for the civil fraud penalties for the 2006 and 2007 tax years. This Court has considered all arguments made by the parties and,

**[\*17]** to the extent they are not addressed herein, deems them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*